PEOPLE *v.* WOODSON.

1. WITNESSES—ONE-MAN GRAND JURY—SCOPE OF IMMUNITY.
    The statute providing for granting immunity to a witness before a so-called one-man grand jury expressly protects the witness against prosecution for any offense concerning which his answers may tend to incriminate him, but it does not protect him from an offense subsequently committed (3 Comp. Laws 1929, § 17220).

2. PERJURY—EVIDENCE—ONE-MAN GRAND-JURY WITNESS—IMMUNITY—STATUTES.

   In prosecution for perjury, charged as having been committed at trial of a criminal case, testimony which had previously been given by alleged perjurer before so-called one-man grand jury was admissible to prove that in the later criminal case he had testified falsely, notwithstanding the statute providing for the granting of immunity may not have been complied with as to defendant herein when he testified before the so-called one-man grand jury (3 Comp. Laws 1929, § 17220; Act No. 328, § 422, Pub. Acts 1931).

3. CRIMINAL LAW—QUESTIONS REVIEWABLE ON APPEAL—PERJURY—ONE-MAN GRAND-JURY WITNESS—IMMUNITY.

   On appeal from judgment of conviction of the crime of perjury for testifying falsely in a prosecution, for crime, the question of whether or not the alleged perjurer was properly granted immunity on motion .of an *amicus curiae* at preceding so-called one-man grand-jury proceeding is not before the Supreme Court (3 Comp. Laws 1929, § 17220; Act No. 328, § 422, Pub. Acts 1931).

4. PERJURY—SUFFICIENCY OF EVIDENCE.

   In prosecution for perjury, evidence *held,* ample from which jury could find defendant guilty beyond a reasonable doubt (Act No. 328, § 422, Pub. Acts 1931).

5. CRIMINAL LAW—PERJURY—INSTRUCTIONS—REQUESTS TO CHARGE—MISCARRIAGE OF JUSTICE.

   On appeal from conviction of charge of perjury no reversible error is found in court's charge to jury when considered as a whole where defendant presented no specific requests to charge and made no objection to charge when given and there does not appear to have been a miscarriage of justice (3 Comp. Laws 1929, § 17354; Act No. 328, § 422, Pub. Acts 1931).

Wiest, J., dissenting.

Appeal from Recorder's Court for the City of Detroit; Maher (John J.), J. Submitted April 13, 1944. (Docket No. 62, Calendar No. 42,340.) Decided September 11, 1944. Rehearing denied December 1, 1944. Certiorari denied by Supreme Court of the United States March 5, 1945.

Clinton Woodson was convicted of perjury. Affirmed.

*Lewis, Rowlette & Brown* (*George Stone,* of counsel), for appellant.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *William E. Dowling,* Prosecuting Attorney, and *Frank S. Valenti* and *Henrietta E. Rosenthal,* Assistant Prosecuting Attorneys, for the people.

BUSHNELL, J.   On jury trial defendant Clinton Woodson was convicted of the statutory offense of perjury (Act No. 328, § 422, Pub. Acts 1931 [penal code] [Comp. Laws Supp. 1940, § 17115-422, Stat. Ann. § 28.664]) and sentenced to prison for a term of 2 to 15 years.   His motion for a new trial was denied and, having obtained leave, he appeals.

In December, 1939, defendant was called as a witness before Judge Homer Ferguson, sitting as a one-man grand jury engaged in the investigation of gambling and other offenses in Wayne county. Chester P. O'Hara (later appointed special prosecutor) was then acting as *amicus curiae* to said grand jury.   After defendant was sworn, the following took place:

"*Q.*   (By Mr. O'Hara) You have been engaged in operating a policy game in this town?

"*A.*·   I refuse to answer for fear it might incriminate myself.   *   *   *

"*Mr. O'Hara:* I ask the court to grant this man immunity under the statute, and require him to answer the questions put to him, the same as though they were reduced to writing, pursuant to the statute, so that he will not be prosecuted for any answers that he gives on this record.

"*The Court:* The law provides that when you claim a privilege that way, the court can grant you immunity.   Now according to the statute in this case

made and provided *the court does now grant you immunity the same as if each of these questions was in writing, and your answer in writing; now the court must require you, after granting you this immunity, that you answer the questions;* now when they ask you similar questions that might incriminate you, I will take it that you are claiming the same privilege, and I am now granting you immunity on all the questions and all the answers in this record. So now you must answer."

Following such purported grant of immunity, defendant was questioned and testified at considerable length regarding gambling and other offenses.

In October, 1941, defendant was called as a witness for the prosecution in the case of *People* v. *Roxborough,* then being tried in the circuit court for Wayne county (*People* v. *Roxborough,* 307 Mich. 575). He testified under oath relative to the same matters about which he had given testimony before the grand jury. Subsequently he was arrested and charged with having committed perjury in giving false testimony in the *Roxborough Case.* In proof of the perjury charge, the prosecution introduced in evidence, without objection by defendant, the court reporter's transcripts of defendant's testimony before the grand jury and in the *Roxborough Case,* and portions of such transcripts, were read to the jury. It appeared that certain parts of his testimony in the *Roxborough Case* were contrary to and in conflict with his grand-jury testimony on the same subjects.

It is admitted that in granting defendant immunity against self-incrimination, the grand jury did not comply with the provisions of 3 Comp. Laws 1929, § 17220 (Stat. Ann. § 28.946), which provides:

"No person shall upon such inquiry be required to answer any questions the answers of which might

tend to incriminate him except upon motion in writing by the prosecuting attorney which shall be granted by such justice or judge, and any such questions and answers shall be reduced to writing and entered upon the docket or journal of such justice or judge, and no person required to answer such questions upon such motion shall thereafter be prosecuted for any offense concerning which such answers may have tended to incriminate him."

As hereinbefore shown, defendant was granted immunity upon the oral motion of Mr. O'Hara, who was appearing as *amicus curiae* to the grand jury. The motion was not "in writing by the prosecuting attorney" as required by the above statute (*In re Wyrick,* 301 Mich. 273; *In re Hickerson,* 301 Mich. 278). The record does not show whether or not the questions and answers before the grand jury were "reduced to writing and entered upon the docket or journal" of the judge. However, it does appear that they were taken down by a court reporter and transcribed.

Defendant contends that the grant of immunity was illegal because not in compliance with the statute; that he was compelled to testify by the grand jury and, therefore, his testimony was not voluntary; and that such testimony could not be used against him in his subsequent trial for perjury. In support of his contention defendant cites *In re Wyrick, supra,* and *In re Hickerson, supra.* In each of those cases a justice of the peace of the Pontiac municipal court was conducting a judicial investigation, in pursuance of 3 Comp. Laws 1929, § 17217 *et seq.* (Stat. Ann. § 28.943 *et seq.*). He appointed an attorney to assist in the examination of witnesses and in the conduct of such investigation. The respective defendants were subpoenaed and asked certain questions, which they refused to answer on

the ground that their answers might incriminate them. The attorney appointed filed written motions to grant them immunity, and immunity was granted by the justice. They again refused to answer and were found guilty of contempt and sentenced. On review, the circuit court upheld the validity of the immunity granted. Both defendants then appealed, contending in substance that they were not required to answer the questions propounded, because their immunity was not granted upon motion of the prosecuting attorney, as required by the statute. In each case we held that the defendant was not guilty of contempt and should be released from custody. In the *Wyrick Case* we said:

"The right to grant immunity is found in the statute hereinbefore cited (3 Comp. Laws 1929, § 17220). An examination of this statute clearly leads to the conclusion that the making of a motion to grant immunity must be left to the discretion of the State's representative. The State has wisely provided that this power should lie in the discretion of the prosecuting attorney or the attorney general in certain cases. It follows that the trial court was in error in affirming the action of the justice of the peace in granting immunity upon the motion of one not a prosecuting attorney or attorney general or the duly authorized representative thereof."

In the *Hickerson Case* we said:

"The language of the statute, in providing that the motion shall be made by the prosecuting attorney, is mandatory in tone. * * *
"A power of such importance should be exercised only by those whose sworn duty it is, as public officers, in this case the prosecuting attorney or attorney general, to enforce the criminal laws."

It should be noted that in the above-discussed cases the witnesses, after being granted purported

immunity, refused to answer questions which might have incriminated them, while in the present case defendant, after being granted purported immunity, freely answered questions propounded to him. Under the above holdings, his refusal to answer would not have placed him in contempt. However, such decisions are not determinative of the question before us, as to whether or not defendant's testimony before the grand jury in December, 1939, was admissible in proof of his perjury in the *Roxborough Case* in October, 1941.

The immunity statute expressly protects a witness against prosecution for any offense concerning which his answers may tend to incriminate him, but it does not protect him from an offense subsequently committed. Defendant's answers before the grand jury did not relate to the offense of perjury, which he committed two years later and, therefore, his answers did not then tend to incriminate him as to such offense. As he apparently testified before the grand jury in reliance upon and without questioning the legality of the purported grant of immunity, it may reasonably be inferred that he testified the same and as truthfully as though immunity had been granted in conformity with the statute. Therefore, we conclude that his testimony, so given before the grand jury, was properly admissible as tending to prove that subsequently, in the trial of the *Roxborough Case,* he testified falsely. The authorities cited by defendant do not sustain his contention that such testimony was not admissible.

The question, whether or not the immunity granted defendant on the motion of an *amicus curiae* protected him from prosecution for any offense of which his answers may have tended to incriminate him, is not before us. Apparently he received the immunity which the statute intended,

as there is no showing that he was ever prosecuted as a result of incriminating answers.

Immediately after testifying in the *Roxborough Case,* defendant admitted to Mr. O'Hara, then acting as special prosecutor, and to other persons, that he had testified falsely. Mr. O'Hara, called as a prosecution witness, said in part:

"*Q.* Now, what was said by Mr. Woodson (defendant) in connection with the testimony which he had given before Judge Pugsley?

"*A.* Well, Woodson was asked   *   *   *   whether or not it was not a fact that he had testified falsely before Judge Pugsley, and he said that he had."

O'Hara's testimony as to defendant's admission of perjury was corroborated by that of an assistant prosecutor, an assistant attorney general, and a police officer. A partner and former business associate of defendant in the gambling business testified as to facts which indicated that he testified truthfully before the grand jury and falsely in the *Roxborough Case.* Defendant did not take the stand and offered no testimony in the present case. We are satisfied that there was material and ample evidence from which the jury, as judge of the facts, could find him guilty beyond a reasonable doubt of the crime charged.

Defendant further contends that the trial court erred in its charge to the jury. We have carefully examined such charge and conclude that, when considered in whole, it fully and fairly presented the questions of fact involved and the law properly applicable thereto. It should be noted that defendant presented no specific requests to charge and made no objection to the charge when given. The trial court did not err in denying defendant's motions for a directed verdict and for a new trial. Other questions raised and errors assigned do not merit con-

sideration. We are convinced that there was no miscarriage of justice (3 Comp. Laws 1929, § 17354 [Stat. Ann. § 28.1096]).

The conviction is affirmed.

NORTH, C. J., and STARR, BUTZEL, BOYLES, and REID, JJ., concurred with BUSHNELL, J.

WIEST, J. (*dissenting*). I do not join in the opinion.

Judge Ferguson was investigating the commission of crimes and defendant, as a suspect, was brought before him to be questioned, under oath, regarding violation of the criminal law against gambling and his connection therewith. The stenographic record of his examination, under oath, by an *amicus curiae* shows:

"*Q.* Where do you live, Mr. Woodson?
"*A.* 326 Frederick.
"*Q.* Got a telephone there?
"*A.* Temple 15626.
"*Q.* You work with Charles Mosley?
"*A.* Yes.
"*Q.* You have been engaged in operating a policy game in this town?
"*A.* I refuse to answer to (for) fear it might incriminate myself."

Thereupon Mr. O'Hara as *amicus curiae* stated:

"I ask the court to grant this man immunity under the statute, and require him to answer the questions put to him, the same as though they were reduced to writing, pursuant to the statute, so that he will not be prosecuted for any answers that he gives on this record."

The judge ruled:

"The law provides that when you claim a privilege that way, the court can grant you immunity. Now

according to the statute in this case made and provided the court does now grant you immunity the same as if each of these questions was in writing, and your answer in writing; now the court must require you, after granting you this immunity, that you answer the questions; now when they ask you similar questions that might incriminate you, I will take it that you are claiming the same privilege, and I am now granting you immunity on all the questions and all the answers in this record. So now you must answer. All right.''

Thereupon, under questions and answers, defendant incriminated himself and testified to crimes, relative to gambling, committed by himself and associates. Later on, one John Roxborough was charged with crimes connected with gambling and obstruction of justice as set forth in *People* v. *Roxborough*, 307 Mich. 575, and was convicted and the conviction affirmed.

At the trial of Roxborough defendant was called as a witness by the prosecution and testified contrary to the testimony he gave before the one-man grand jury. He was tried for perjury in doing so, was convicted and his case is here by appeal.

The prosecution proceeded on the theory that defendant's testimony before the grand jury was true and he deliberately falsified in the testimony he gave at the trial of Roxborough. To sustain such claim the prosecution offered in evidence the stenographic report of defendant's testimony before Judge Ferguson and the assistant prosecuting attorney, who conducted the examination of defendant before Judge Ferguson was present at the trial of Roxborough, and the assistant attorney general and the assistant prosecuting attorney and one other person testified that after defendant testified in the *Roxborough Case* they had a conversation with him in which he stated that his testimony in the *Rox-*

*borough Case* was untrue and his testimony before Judge Ferguson was true.

The first question presented is whether defendant ever lost his constitutional privilege against self-incrimination. So far as the record shows Judge Ferguson granted the immunity upon the oral request of Mr. O'Hara as *amicus curiae.* The statute relative to granting immunity and requiring a witness to testify against himself is explicit in requiring the prosecuting attorney to make the motion relative to immunity in writing. This was not done and it is not a minor detail that can be overlooked. The statute requiring the request to be in writing has a purpose and that purpose is to have a permanent record of the same. The statute also requires that in case immunity is granted the questions to the witness shall be put in writing and also his answers, but since the time of court reporters and stenographic records it may well be said the testimony taken by a stenographer is equivalent to having the questions and answers in writing.

During the course of the examination before Judge Ferguson defendant again stated when a question was put to him: "Should I claim that it might incriminate me," and the court said, "I grant you the same privilege as I heretofore granted you under the statute, the same as if the question was in writing, and I now require you to make the answer. That will apply to all your questions, so you can go ahead and answer."

Under the record defendant never lost his constitutional privilege not to incriminate himself, and that privilege remained and was with him when he testified in the *Roxborough Case.* But it may be said that at the trial of defendant no objection was made to the introduction of his testimony before Judge Ferguson. Good practice required an ob-

jection and a ruling by the court, but we are here reviewing a constitutional privilege, personal to defendant, which may not be waived by mere inattention of his attorney. The point we are now discussing was presented to the trial court upon a motion to direct a verdict and later for a new trial and is before this court under the statement of questions involved. I think the right to consider the point is before the Court and we should review and maintain the constitutional privilege of the defendant in giving testimony before Judge Ferguson.

The Constitution of Michigan (1908), art. 2, § 16, provides:

"No person shall be compelled in any criminal case to be a witness against himself."

The statute, 3 Comp. Laws 1929, § 17220 (Stat. Ann. § 28.946), provides:

"No person shall upon such inquiry (grand jury) be required to answer any questions the answers of which might tend to incriminate him except upon motion in writing by the prosecuting attorney which shall be granted by such justice or judge, and any such questions and answers shall be reduced to writing and entered upon the docket or journal of such justice or judge, and no person required to answer such questions upon such motion shall thereafter be prosecuted for any offense concerning which such answers may have tended to incriminate him."

In review of civil cases, except in chancery, heard *de novo,* we limit consideration to points of law reserved by presentation and rulings thereon, for such is a matter of procedure, but in the instant case where the record on its face clearly shows that a right guaranteed the defendant by the Constitution has been violated, we should consider the same.

The right of defendant in this instance rises above the failure of his attorney to object to introduction of the testimony taken before Judge Ferguson under an order, void on its face, and it is our duty to support defendant's constitutional right presented to the trial court upon the motion for a new trial. The right, guaranteed by the Constitution against self-incrimination, when duly invoked, is never lost or waived by forced compliance with a void court order and it remains void and is not validated by failure of counsel to object to it when offered by the prosecution.

This court will support the Constitution when the record affirmatively makes it appear that right thereunder has been denied, even though failure of counsel did not present the point until upon motion for directed verdict and for new trial. It is not a matter of mere grace on our part, but vindication of the right under the supreme law of the State which we may not pass unnoticed or invoke the statute that if defendant is guilty we may pass our duty in this instance.

At the close of the proofs, counsel for defendant moved for a directed verdict, one ground being that defendant was not granted legal immunity by Judge Ferguson, and called the court's attention to the statute relative to immunity and that it had not been complied with.

The trial court stated:

"The transcript (testimony of defendant before Judge Ferguson) read by Mr. Chamberlin (the stenographer) shows that from time to time during the testimony Judge Ferguson advised him that he had been granted immunity. He granted him immunity when O'Hara requested it at the outset and then during the course of remarks before the grand jury he was told on at least one occasion or maybe

two, that he was granted immunity and that he should go ahead and answer those questions just the same as if they had been submitted to him in writing in question form. So I am of the opinion that the people have made out a sufficient case to have the same go to the jury, and your motion for directed verdict is denied."

Counsel for defendant again directed the court's attention to the statute and quoted the provision:

" 'No person shall upon such inquiry'—that is relating to the inquiry of a one-man grand jury or an inquisitory body—'be required to answer any questions the answers of which might tend to incriminate him except upon motion in writing by the prosecuting attorney which shall be granted by such justice or judge,' " et cetera,

and claimed:

."Now that is the letter of the law and I claim it was not followed as strictly as it should have been and there never was any immunity granted in Judge Ferguson's court."

Thereupon the court stated:

"Maybe you are right, but let the Supreme Court decide that. I said in my remarks in denying your motion that Judge Ferguson granted him immunity. Whether it was in full compliance with the law or not, I don't know. Mr. Valenti says it doesn't make any difference. He says that he went there and there was an attempt, at least, to grant him immunity and he thought he had immunity and he went ahead and made certain statements and he says that when he reappeared in another proceeding that he made statements which are in conflict with what he said before Judge Ferguson. I don't think anything further need be said."

My Brother states that defendant was examined as a witness before Judge Ferguson by Chester P.

O'Hara as *amicus curiae,* and in this he is right. The examination of defendant as a witness before Judge Ferguson was in December, 1939, and Mr. O'Hara, in July, 1942, as a witness in the instant case, testified:

"I am an attorney at law; for the last seven or eight months I have been special prosecutor of Wayne county and prosecuted the case of the People *v.* John Roxborough, Reading and others; I was *amicus curiae* to the one-man grand jury and as such I took statement from Clinton Woodson, who appeared as a witness for the people and testified in the case of the People *v.* John Roxborough and others, before Judge Pugsley."

The court in *Re Wyrick,* 301 Mich. 273, in an opinion written by Mr. Justice SHARPE, expressly held that an *amicus curiae* could not even in writing move the court to grant immunity to a witness, and in *Re Hickerson,* 301 Mich. 278, the court again held that an *amicus curiae,* in a proceeding to investigate the commission of crime, could not move the court to grant a witness immunity, and emphasized the fact that:

"Aside from legislative intent, gleaned from statutory language, broad questions of public policy would seem to require that the use of such authority be limited. It can readily be seen that serious abuses could result if it were determined that any member of the bar while assisting at the inquiry could make a motion to grant immunity from criminal prosecution of any person who might be called as a witness. A power of such importance should be exercised only by those whose sworn duty it is, as public officers, in this case the prosecuting attorney or attorney general, to enforce the criminal laws."

Defendant when brought before Judge Ferguson as a witness claimed his constitutional privilege

against self-incrimination. Verbal motion of the *amicus curiae* to grant immunity and force defendant to testify was void and defendant never lost his constitutional privilege against self-incrimination. But, if it be said that defendant's privilege against self-incrimination was lost by the order of Judge Ferguson to grant him immunity, then the case at bar falls squarely within the holding in *Cameron* v. *United States*, 231 U. S. 710 (34 Sup. Ct. 244, 58 L. Ed. 448). We quote the syllabus:

"The use of testimony given by the bankrupt in a hearing before a commissioner to contradict his testimony given before the referee, in a trial on an indictment for perjury in giving the latter testimony, violates the immunity guaranteed under Rev. Stat., § 860, and the use thereof is reversible error."

There, as here (if we hold immunity was legally granted by Judge Ferguson), the prosecution introduced testimony of the accused to show that he told the truth under protection of immunity and, subsequently, wilfully committed perjury when questioned about the same matters. This cannot be done.

Without warrant of law defendant was deprived of his constitutional right against self-incrimination by Judge Ferguson and there was reversible error in using such self-incrimination at his trial for perjury. The motion for a directed verdict and new trial brought the error before the trial judge and there was reversible error in not granting a new trial under a holding, in effect, that such testimony before Judge Ferguson was proper upon the question of defendant's perjury at the trial of Roxborough.

The charge against Roxborough and his trial thereon involved the very subject matter of defendant's testimony before Judge Ferguson and, there-

fore, defendant's testimony forced by an unwarranted order was inadmissible upon the question of perjury.

Before Judge Ferguson defendant was compelled by a void order to be a witness against himself in a criminal case which, to say the least, was judicial coercion, and when prosecuted for perjury at the trial of Roxborough that testimony was employed to convict him. His testimony before Judge Ferguson and at the trial of Roxborough related to the same subject matter and thereafter he was prosecuted for perjury and his incriminating answers before Judge Ferguson employed to convict him of the charge of perjury. Such action was in violation of the Constitution and the statute.

Defendant never lost his constitutional right against self-incrimination and his testimony before Judge Ferguson was exacted in violation of his constitutional right. and its use by the prosecution to show perjury on his part in testifying contrary thereto in the *Roxborough Case* was reversible error.

The rule applicable here is stated as follows in American Law Institute, Model Code of Evidence, Rule 232, page 171:

"Evidence of a statement or other disclosure made by a person is inadmissible against him if the judge finds that he had and claimed a privilege to refuse to make the disclosure but was nevertheless required to make it."

In commenting on this rule it is said:

"This rule states the existing law. It safeguards the privilege against destruction by its very violation. It is not in conflict with the settled common-law doctrine which refuses to exclude evidence merely because it has been procured by illegal means. A violation of a rule which has for its sole

purpose the prevention of compulsory disclosure may well be given a different effect from that given to the violation of a rule which has a different primary objective.''

The conviction should be reversed and a new trial granted.

Sharpe, J. (*concurring in affirmance*). In October, 1941, defendant was called as a witness for the prosecution in the case of *People* v. *Roxborough*, 307 Mich. 575. He gave testimony there that was at variance with certain testimony given by him before a grand jury in December, 1939. The prosecution in the instant case is for perjury committed in the Roxborough trial.

The evidence relied upon to negative the testimony in the *Roxborough Case* was the testimony given by defendant before the grand jury and admissions made to Chester O'Hara, special prosecutor, Thomas Kenny, assistant attorney general, William Brusstar, assistant special prosecuting attorney, and Leo Mack, a police officer, and the testimony of Charles H. Mosley, a former partner of defendant, whose testimony corroborated the testimony given by defendant before the grand jury.

Defendant urges that it was error to admit any of his grand-jury testimony. It is to be noted that this testimony was received without objection. I am not in accord with the statement found in Mr. Justice Wiest's opinion—''The right, guaranteed by the Constitution against self-incrimination, when duly invoked, is never lost or waived by forced compliance with a void court order and it remains void and is not validated by failure of counsel to object to it when offered by the prosecution.''

Under the authority of *In re Wyrick*, 301 Mich. 273, immunity may be granted only upon the motion

of the prosecuting attorney or attorney general. In the case at bar the so-called immunity granted defendant in the grand-jury proceedings was a nullity in so far as making him immune from prosecution for criminal acts testified to in such proceedings. Such testimony must be considered to have been given involuntarily and as such was inadmissible, but it does not follow that defendant could not waive the right to have this testimony rejected.

In *People* v. *Lauder,* 82 Mich. 109, 121, we said:

"A party may waive personal rights, although secured to him by law or by the Constitution. He may waive the right to a preliminary examination upon a criminal charge."

See, also, *People, ex rel. Roach,* v. *Carter,* 297 Mich. 577.

In my opinion defendant waived the right to have his grand-jury testimony excluded.

I concur in affirmance of the judgment.