PEOPLE *v.* HELD.

CRIMINAL LAW—SUBSEQUENT ADMISSION OF TESTIMONY GIVEN UNDER.
GRANT OF IMMUNITY.

> Admission of testimony, given by defendant on the preliminary
> examination of his predecessor as prosecuting attorney, where-
> in defendant had testified while under a grant of immunity
> as to his participation in the taking of bribes for allowing
> gambling, crimes similar to that with which he was being
> prosecuted, was improper and prejudicial to defendant (Const
> 1908, art 2, § 16; CL 1948, § 767.6).

Appeal from Macomb; Sanford (Joseph F.), J.,
presiding. Submitted June 14, 1951. (Docket No..
57, Calendar No. 44,742.) Decided October 1, 1951.

Wilbur F. Held was convicted of conspiracy to
violate gambling laws. Reversed and new trial
granted.

*Harrison T. Watson,* for appellant.

*Frank G. Millard,* Attorney General, *Edmund E.*
*Shepherd,* Solicitor General, *Daniel J. O'Hara,* As-
sistant Attorney General, and *Edward A. Jacob,* Spe-
cial Assistant Prosecuting Attorney, for the people.

REFERENCES FOR POINTS IN HEADNOTES
58 Am Jur, Witnesses § 100.

Butzel, J. Wilbur F. Held, defendant, in an information filed September 28, 1948, containing 3 counts, was charged:

*First:* "On or about the 15th day of June, A.D. 1943, and on divers other days and times between that day and the 1st day of December, A.D. 1945, * * * Wilbur F. Held, Arthur P. Sauve and Johnny Sierens, did unlawfully * * * conspire * * * to wilfully and corruptly violate the laws of this State, against gambling."

*Second:* (as amended at the commencement of the trial) "On or about the 15th day of June, A.D. 1943, and on divers other days and times between that day and the 1st day of December, A.D. 1945 * * * Arthur P. Sauve and Johnny Sierens, did unlawfully * * * conspire * * * with Wilbur F. Held, who was from the 1st day of January, A.D. 1943 through the 23d day of June, A.D. 1946, the duly elected * * * prosecuting attorney for said county of Macomb * * * for the purpose and with the intent of thereby inducing and conspiring with said Wilbur F. Held, a public official, to become lax, negligent and to refrain from the full performance of his official duty relative to the enforcement of the criminal laws of the State of Michigan."

*Third:* "On or about the 15th day of June, A.D. 1943 * * * Wilbur F. Held * * * did then and there corruptly accept * * * $400 * * * under an agreement and understanding with one Arthur P. Sauve, that his judgment and decision would be given in favor of allowing illegal gambling to operate."

Some 8 months after a jury found the defendant guilty on all 3 counts, the court, on its own motion, dismissed count 2, and sentenced Held on each of counts 1 and 3 to not less than 15 months nor more than 5 years, the terms to run concurrently, with a recommendation that the minimum terms be served. Upon leave granted, a general appeal was taken.

On June 6, 1946, Held appeared before Judge Herman Dehnke, sitting as a one-man grand jury (so-called) in the county of Macomb under the authority of CL 1948, §§ 767.3, 767.4 (Stat Ann §§ 28.943, 28.944).* On motion of the attorney general, Held was asked:

"Have you since January 1, 1943, received from Merton Wertheimer, Dan Sullivan, Lincoln Fitzgerald, (other names), * * * *or from any other person in their behalf* (emphasis added) any moneys or other things of value?"

"If so, state full details thereof as to dates, amounts, and place and number of payments, and of all conversations relating thereto or to the understanding of the purpose under or for which such payments were made?"

Judge Dehnke granted immunity from prosecution to Held, as provided in CL 1948, § 767.6 (Stat Ann § 28.946), ordered that he be not prosecuted for any offenses concerning which his answers may have tended to incriminate him, and required him to answer the questions propounded to him. It will be noted that the crimes alleged in the information fell within the period covered by the immunity order. There was also a second grant of immunity given to Held by Judge Dehnke based on Held's activities during the term of Ivan Johnston, the prosecuting attorney who immediately preceded Held in office.

To prove the conspiracies in counts 1 and 2, and the bribe in count 3, the prosecution introduced the testimony of Arthur P. Sauve and John Sierens. Sauve testified that he met with Wertheimer, Sullivan and Fitzgerald, who were in the gambling business and are referred to as the "syndicate," and Sauve entered into an agreement with them. It provided that Sauve was to contact and arrange for

---

* Amended by PA 1949, No 311; PA 1951, No 276, which amendments have no effect on the instant decision.

bribes to be paid to 2 Michigan State Police officers whom he knew, and in return the "syndicate" was to allow Sauve and his partner Sierens to place their slot machines in the gambling places run by the "syndicate." Except for the placing and servicing of slot machines Sauve had nothing to do with the operation of the gambling places. The collections from the slot machines were made by Sierens' employees. The profit was split 50% to the "syndicate," the other 50% to Sauve and Sierens in equal shares. Out of the latter 50%, Sauve paid Held more or less regular monthly amounts, aggregating some $3,800. This money was paid to Held in order to operate the slot machines without interference, and the "syndicate" arranged for its own protection in running its gambling places. During cross-examination Sauve testified:

"Q.    *   *   *   Everything these men did to enable that gambling operation of the slot machines you owned, to proceed and go ahead and operate, redounded to your benefit because you were getting half of the proceeds.  Right?

"A. That is right.    *   *   *

"Q.    *   *   *   Whatever you did to keep the ball rolling to keep your machines operating in these places you testified they were operating, the same places owned by the syndicate, whatever you did operated to their benefit?    *   *   *

"A. Yes."

This arrangement lasted from April, 1943, until some time in 1946. There was other testimony not relevant to the immediate decision.

It is not necessary to indulge in semantics, or to look for authorities to determine the meaning of the phrase "in their behalf" in the immunity order, and its application to the present facts. Its meaning is plain. If Sauve had not given the money to Held, presumably he would not have been allowed to con-

tinue his illegal business. Had this happened, Sauve's full partners in the slot-machine business would have lost their share of the profits. Clearly, any money paid to Held by Sauve also was in behalf of the "syndicate," who obviously thus ran their gambling places without any interference from Held.

The defendant attempted to stand on the immunity order. It was presented as the basis for a plea in abatement as well as in the opening statement, again during the people's case and finally as a matter of defense. However, it was never admitted into evidence, the court first holding that the crimes charged did not fall within the immunity order, and then, after the testimony was in and it had become apparent that it did, that it was incumbent upon the defendant to show that he had answered the questions, and also that such answers did tend to incriminate him, relying on *People* v. *Norwood,* 312 Mich 266. The jury was charged that it was not to consider any immunity order in reaching its decision.

It seems more than likely that if Held gave a complete answer to the questions in the immunity order, he would have told of his nefarious dealings with the "syndicate's" agent. However, the record does not contain Held's answers to the questions, nor were they introduced during the trial. This may, perhaps, have been due to Judge Dehnke's desire to maintain secrecy in the proceedings, for the statute provided:

"And any such questions and answers shall be reduced to writing and entered upon the docket or journal of such justice or judge, and no person required to answer such questions upon such motion shall thereafter be prosecuted for any offense concerning which such answers may have tended to incriminate him." CL 1948, § 767.6 (Stat Ann § 28.946).

It was not incumbent upon Held to see to it that the judge performed this statutory duty.

During the trial of the instant case, the people did not deny the validity of the immunity orders (nor could they conscientiously do so, for Held had already been adjudged guilty of contempt of court for refusing to answer questions at the trial of Ivan Johnston, the court there holding that he could not refuse to answer having been granted complete immunity from prosecution by Judge Dehnke's immunity orders). However, the people claimed that the immunity order did not prima facie include the conspiracy and bribe with Sauve and Sierens as they were not named, and before immunity could become effective the defendant must show that he gave answers that tended to incriminate him. The people contended that if Held was in fact protected, he had the burden of producing his answers.

Held claimed that the only reason he did not have his answers in the immunity order was because Judge Dehnke had neglected the administrative step of recording the answers on his docket. He argued that satisfactory answers to the questions in the immunity order would have included the conspiracy and bribery, and that the answers must have been satisfactory for the immunity order was never rescinded, and, in fact, Judge Dehnke certified in writing that the immunity order was valid in June of 1948 long after the testimony was given. Thus, Held claims, he has been prima facie protected by an immunity order, and that it was incumbent on the prosecution, which at all times had ready access to the grand jury records as far as they existed to show that he had not incriminated himself.

The State could have introduced Held's answers to the questions in the immunity order. *People* v. *McCrea,* 303 Mich 213; *People* v. *Karoll,* 315 Mich 423. Held also could have forced the introduction of the

testimony. *People* v. *McCrea, supra; People* v. *Norwood, supra.* It is conceded by the prosecution that the immunity order is valid, and it is conceded by Held that if his answers did not tend to incriminate him, he would not be immune from prosecution. Thus the primary question for our decision is: Did the State have the burden of showing that Held's answers did not incriminate him, or was that burden upon the defense? We are constrained to hold that the trial court erred in not requiring the State to show that Held had not incriminated himself.

We will first distinguish the *Norwood Case, supra,* for it seemingly holds that a defendant, relying upon an immunity order must show that he incriminated himself before he can take advantage of that order. In the *Norwood Case,* the crimes charged were committed after the grant of immunity. An immunity order does not protect against subsequently committed crimes. *People* v. *Woodson,* 309 Mich 391 (157 ALR 419). Moreover, the defendant did not introduce the immunity order, and there was nothing before the court to indicate the nature of his testimony. We recognized that it might be possible, due to the peculiar facts in the case, that the defendant had incriminated himself. However, the contingency was so remote that we felt it was incumbent upon the defendant to make a showing. In the instant case, the crimes charged fall within the period covered by the immunity order. Defendant made repeated efforts to introduce the immunity order at the trial. By the testimony of the State's principal witness, it was shown that Sauve was acting on behalf of the men named in the immunity order. The probability that Held had incriminated himself was not too remote, as it was in the *Norwood Case.* For these reasons the *Norwood Case, supra,* is not applicable.

We believe under the authority of *In re Watson,* 293 Mich 263, that the prosecution had the burden of showing that Held's answers did not tend to incriminate him. The Constitution of 1908, art 2, § 16, provides:

"No person shall be compelled in any criminal case to be a witness against himself."

We held in the *Watson Case* that the statute, CL 1948, § 767.6 (Stat Ann § 28.946), was as broad as the constitutional inhibition, and that a person could only be made to answer incriminating questions upon the granting of absolute immunity against prosecution for any offense that the defendant may have tended to incriminate himself of by his answers. It is apparent in the instant case that if Held's answer was of any length, there could have been many facts or references given which could have been the key to the discovery of the Sauve conspiracy. See *In re Watson, supra,* at page 271, where we quote from Chief Justice Marshall's opinion in the Burr trial.* Under these circumstances it would be unjust to require Held to prove that he had incriminated himself in answering the questions.

For this reason the judgment of conviction must be reversed, and the sentence set aside as there was no showing that Judge Dehnke's order of immunity was not effective.

The defendant also claims that there was a misjoinder of counts, relying principally on *People* v. *Ormsby,* 310 Mich 291. In the *Ormsby Case* the defendant was tried on 16 counts. The first 15 each charged the defendant with conspiracy to violate the gambling laws, and the 16th charged the defendant with conspiracy to obstruct justice. We held that the 16th count was entirely different and

---

* 1 Burr's Trial, p 244, Fed Cas No 14692e, 25 Fed Cas 38, 40.— REPORTER.

inconsistent with the first 15, and that they were not provable by the same testimony. Since it is well settled that the State cannot prosecute for separate and distinct crimes by means of one information, *People* v. *Bommarito,* 309 Mich 139; *People* v. *Stuart,* 274 Mich 246, the sentence was set aside, and judgment of conviction reversed. At first glance, it would seem that the *Ormsby Case* is controlling, for in the present case, the first count charged a conspiracy to violate the gambling laws, and the second a conspiracy to obstruct justice. However, because of Held's position as prosecuting attorney, the 2 counts were not inconsistent.

The purpose of prohibiting inconsistent counts in a single information is to protect the defendant. In *People* v. *Ormsby, supra,* we said, quoting from *People* v. *Aikin,* 66 Mich 460, 472 (11 Am St Rep 512):

"He (defendant) has a right to be warned by the complaint and warrant of what he is accused, and ought not to be convicted of 2 different crimes, committed at different times, under 1 information, with the evidence of each confounded as a whole, and used indiscriminately to convict him of both."

And in *People* v. *McKinney,* 10 Mich 54, at page 94, we said:

"As a general rule, in cases of felony, when it clearly appears, from the indictment or otherwise, that several entirely distinct felonies are intended to be charged and proved, the court will, in its discretion, either quash or compel the prosecutor to elect: * * * But there is nothing technical in the rule; and in the exercise of this discretion the court will not be governed simply by the question whether several different offenses in point of law are charged and intended to be proved; but mainly, as a general rule, by the consideration whether the trial of these several offenses would involve the proof of

substantially different transactions, and thereby tend to confuse the defendant in his defense, or deprive him of any substantial right. And therefore where the several offenses charged, though distinct in point of law, yet spring out of substantially the same transaction, or are so connected in their facts as to make substantially parts of the same transaction, or connected series of facts, the defendant cannot be prejudiced in his defense by the joinder, and the court will neither quash nor compel an election."

Held was prosecuting attorney, charged with enforcing the law of the State of Michigan. By his acts in conspiring to allow gambling, he was also conspiring to obstruct justice. Thus both crimes arose out of the same acts and transactions, and were provable by the same testimony. *People* v. *Lowenstein,* 309 Mich 94. The joinder was not prejudicial to the defendant. As count 2 has been dismissed we need not discuss whether certain testimony given thereunder was properly admitted.

Nor is there any merit to the defendant's contention that it was improper to join the bribery count with the conspiracy counts. The bribery was an integral part of a single transaction, the agreement between Held and Sauve regarding gambling. It is true that the time element is different, but this is of no consequence, for if the bribery were the sole charge, the events which took place over the years would be admissible in evidence to show the purpose for which the money was paid. CL 1948, § 768.27 (Stat Ann § 28.1050). See *People* v. *Summers,* 115 Mich 537; *People* v. *Dyer,* 79 Mich 480; *People* v. *McKinney, supra.*

During the instant trial, the State introduced testimony given by Held, while under a grant of immunity, as a people's witness at a preliminary examination in criminal proceedings against Ivan

Johnston. In the excerpts read, Held admitted that Johnston was taking bribes for allowing gambling, and that he, as assistant prosecutor, received his share of the money. In listing the people who had paid, both Sauve's and Sierens' names were mentioned.

The people claim that the testimony was admissible under the provisions of CL 1948, § 768.27 (Stat Ann § 28.1050), to show the defendant's motive and the absence of mistake or accident. It is argued that the testimony could not possibly incriminate the defendant for it covered a period prior to Held's term as prosecuting attorney, and that, therefore, the grant of immunity was inoperative. Moreover, the State claims that it was so obvious that the defendant was guilty that the testimony could not possibly have been prejudicial. We find that the State's conduct in introducing this evidence was improper and highly prejudicial to the defendant.

Held would not have been convicted unless the State could have proved beyond a reasonable doubt all of the elements necessary to constitute the crimes of conspiracy or bribery, the overt acts and the requisite criminal intent. If the jury believed that Held had acted without criminal intent, it would have been its duty to find the defendant not guilty. Thus one of the elements of guilt was shown in part by the excerpts from Held's testimony at the Johnston examination. There can be no doubt as to the effect of this testimony on the jury. Held, in the excerpt, admitted that he was guilty of identical conspiracies, with the same conspirators, as those charged in the information. Whatever reservations the jury may have felt prior to hearing this testimony must have been dispelled, and Held's conviction became a predictable result. Thus we have the situation where a man testifies freely, assured that the State could not henceforth punish him for the

crimes he admitted committing; and then finds that the same testimony is used to complete the proof of his guilt. While the judge stated that he only allowed the testimony to show Held's criminal intent, the grant of immunity was a protection against the use of the testimony for any purpose. The judge apparently was aroused by Held's infamous conduct, but the lowest criminal is entitled to a fair trial. *In re Way,* 41 Mich 299. In *Re Watson, supra,* we held that the statutory safeguard was as broad as the constitutional inhibition against self-incrimination. If we allow this evidence to be admitted, we must ignore the plain words of the Constitution. In the event of a retrial, the above testimony will not be admissible in evidence. The State's claim that Held did not make a proper objection to the evidence is without substance and merits no discussion.

Held claims other errors in the admission of evidence. As they will not recur on a new trial, we shall not discuss them.

The judgment of conviction is set aside and the sentence vacated, and the cause remanded for a new trial, at which it must be shown by the State that Held's answers to the questions in the immunity orders given by Judge Dehnke did not tend to incriminate him of the crimes charged.

BOYLES, J., concurred with BUTZEL, J.

CARR, J. *(concurring).* I concur in reversal, and in the granting of a new trial, solely on the ground that the admission of the testimony given by defendant on the preliminary examination in the prior case of Peo-

ple *v.* Johnston was improper and was prejudicial to defendant.

NORTH, BUSHNELL, and SHARPE, JJ., concurred with CARR, J. REID, C. J., and DETHMERS, JJ., did not sit.