**UNITED STATES v. SMITH.**

No. 10872.

United States Court of Appeals
Third Circuit.

Argued June 9, 1953.

Decided Aug. 17, 1953.

Charles A. Stanziale, Newark, N. J., for appellant.

John R. Everitt, Asst. U. S. Atty., Newark, N. J., (Grover C. Richman, Jr., U. S. Atty., Newark, N. J., on the brief), for appellee.

Before BIGGS, Chief Judge, and STALEY and HASTIE, Circuit Judges.

STALEY, Circuit Judge.

Defendant seeks reversal of a judgment entered upon a jury's verdict convicting him of violating Section 145(b) of the Internal Revenue Code.

The indictment was returned on March 11, 1952, and contained seven counts. The first three counts charged that defendant willfully attempted to defeat and evade payment of his individual income taxes for the calendar years 1945, 1946, and 1947, respectively. The four remaining counts charged that defendant, as the officer in control of four different corporations, willfully attempted to defeat and evade payment of income taxes due from those corporations, for the calendar year 1946 for one of them and for the calendar year 1947 for the other three. The jury returned a verdict of guilty on all seven counts.

We deem it unnecessary to set out the testimony in great detail. It is enough to state that the Government introduced evidence, apparently credited by the jury, sufficient to establish the following:

Defendant was the officer in control of a number of corporations. The four named in the indictment, Clinton-Osborne Company, Seven, Twenty-Nine, and Thirty-Three Holding Corporations, were incorporated to hold title to certain real estate developments. Neither defendant nor any of his four corporations filed income tax returns for the taxable years covered by the indictment. The revenue agent who investigated defendant's and the corporations' financial status made a detailed analysis of bank records, bank statements, brokerage accounts, and those books and records of the corporations that he could lay his hands on. From this analysis, he computed the income and tax due thereon of defendant and his corporations. His testimony showed that defendant received substantial amounts of income in the following forms: dividends credited to a brokerage account conducted in his own name, dividends from shares of stock, dividends credited to a brokerage account conducted in the name of his brother-in-law (who, the Government contends, was merely a front for defendant), interest on United States Treasury Bonds, short-term capital gains on the sale of securities in his own name and in the name of his brother-in-law, and dividends and management fees from his corporations. The revenue agent testified that the four corporations received substantial amounts of income from the rental and eventual sale of their properties.

Aside from certain contentions which will be discussed later, defendant admits that he and his corporations had sizable incomes for the years involved, and he admits that no returns were filed. Most of his defenses raise questions of law rather than disputes as to the facts.

Defendant's first point is relied upon as a defense to all the counts in the indictment. He says that he is immune from prosecution for the offenses charged. Some factual background, otherwise unrelated to the present case, is necessary for the proper understanding and disposition of this contention.

In April of 1946, defendant testified, pursuant to a subpoena, at a hearing conducted by the Office of Price Administration relating to an investigation of possible misuse of priority ratings and sales at over-the-ceiling prices by Daisart Sportswear, Inc., another of defendant's corporations. His assertion of his privilege against self-incrimination was unavailing since the Emergency Price Control Act of 1942 [1] incorporated within it the Compulsory Testimony Act of 1893.[2] Thus, defendant was forced to trade his constitutional right to remain silent for the Government's statutory promise not to prosecute him for the matters about which he testified. In spite of the immunity provisions of the Compulsory Testimony Act, defendant was convicted of violations of the Second War Powers Act and the Emergency Price Control Act. The court of appeals affirmed, but the Supreme Court reversed, holding that defendant was immune from prosecution since he had asserted his privilege and his testimony, in part at least, had borne directly upon the subsequent charges. See Smith v. United States, 1949, 337 U.S. 137, 69 S.Ct. 1000, 93 L.Ed. 1264. About one month after his testimony at the Office of Price Administration hearing, defendant was subpoenaed to appear before an agent of the Internal Revenue Bureau and to produce the books and records of Daisart Sportswear, Inc. In October of 1946, defendant appeared and testified.

■ Upon these facts, defendant claims immunity from prosecution for the present offenses, arguing that the information disclosed by him at the prior hearing was available to the revenue agents and was used by them to develop further leads which ultimately brought out the facts which were the basis of this indictment, thus violating his immunity. Of course, the Government denies that there was any such connection, and, at the hearing on the matter, conducted by the district court, the revenue agents who had investigated the fiscal affairs of defendant and his corporations unequivocally denied that the present indictment was in any way based upon any information gained from the Office of Price Administration hearing. However that may be, we need not decide the question. Even assuming that defendant is right on the facts, his legal contention is of no help to him. The obvious defect in his argument, at least as to the counts covering the taxable years 1946 and 1947, is that it amounts to a claim of immunity from prosecution for crimes not yet committed when defendant testified. Each count of the indictment charges that the offense set out was committed on or about March 15 of the year following that for which the tax was due. Thus, the offense of willfully attempting to defeat and evade income taxes for the calendar year 1946 is alleged to have occurred on or about March 15, 1947, and the offense as to the year 1947 is alleged to have been committed on or about March 15, 1948. Thus, defendant's testimony in April of 1946 cannot make him immune from prosecution for crimes which were not committed until 1947 and 1948. The immunity granted by the Compulsory

1. "No person shall be excused from complying with any requirements under this section because of his privilege against self-incrimination, but the immunity provisions of the Compulsory Testimony Act of February 11, 1893 (U.S.C., 1934 edition, title 49, sec. 46), shall apply with respect to any individual who specifically claims such privilege." § 202(g), 56 Stat. 30 (1942), 50 U.S.C.A.Appendix, § 922(g).

2. "No person shall be excused from attending and testifying or from producing books, papers, tariffs, contracts, agreements, and documents before the Interstate Commerce Commission, or in obedience to the subpoena of the commission, * * * on the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him, may tend to criminate him or subject him to a penalty or forfeiture. But no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing, concerning which he may testify, or produce evidence, documentary or otherwise, before said Commission, or in obedience to its subpoena, * * * *Provided,* That no person so testifying shall be exempt from prosecution and punishment for perjury committed in so testifying." 27 Stat. 443 (1893), 49 U.S.C.A. § 46.

Testimony Act is coextensive with the protection granted by the privilege against self-incrimination. Shapiro v. United States, 1948, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787; Heike v. United States, 1913, 227 U.S. 131, 33 S.Ct. 226, 57 L.Ed. 450. Hence, the witness becomes immune only if he could have properly refused to testify because his answers would tend to incriminate him. We fail to see how any answer could tend to incriminate when the crime presently involved was not committed or perhaps even contemplated when the answer was given. United States v. Swift, D.C.N.D.Ill.1911, 186 F. 1002; People v. Woodson, 1944, 309 Mich. 391, 15 N.W.2d 679, 157 A.L.R. 419; certiorari denied, 1945, 324 U.S. 853, 65 S.Ct. 713, 89 L.Ed. 1413. Thus, defendant was not immune from prosecution for the offenses charged in counts two to seven even if the revenue agents did have access to and use the information given by defendant at the hearing in April of 1946.

■ The offense charged in count one, on the other hand, is alleged to have occurred on or about March 15, 1946, which was before defendant testified at the Office of Price Administration hearing. We intimate no opinion, however, as to the effect of defendant's immunity argument upon count one. It is familiar law that where the total sentence imposed upon conviction on a multi-count indictment is less than that which could legally have been imposed upon one count standing alone, the reviewing court will not search through each count but will affirm if the conviction is sustainable as to any one count. Pinkerton v. United States, 1946, 328 U.S. 640, 641 note 1, 66 S.Ct. 1180, 90 L.Ed. 1489; Abrams v. United States, 1919, 250 U.S. 616, 40 S.Ct. 17, 63 L.Ed. 1173. See also Hirabayashi v. United States, 1943, 320 U.S. 81, 85, 63 S.Ct. 1375, 87 L.Ed. 1774, applying the rule to a case of concurrent sentences. Upon a conviction as to any one count for a violation of Section 145(b) of the Internal Revenue Code, defendant could legally have been sentenced to a $10,000 fine and imprisonment for five years. The total sentence actually imposed upon his conviction on all seven counts was a $10,000 fine and imprisonment for two years. Hence, his total sentence upon all seven counts was less than could legally have been imposed upon one count standing alone. Therefore, the rule stated above governs here, and we need not review each separate count.

We come now to the merits of the case. The indictment charges Section 145(b) violations. Defendant says that if there is any crime at all, it is a Section 145(a) violation. The difference is not academic. Aside from the fact that subsection (a) is a misdemeanor, carrying lighter penalties than the felony described in subsection (b), the statute of limitations for (b) is six years;[3] for (a) it is three years.[4] The indictment charges offenses occurring in 1946, 1947, and 1948, but it was not returned until March 11, 1952. Consequently, if the Government has not proved a Section 145(b) case, the prosecution is barred and the judgment must be reversed.

Subsections (a) and (b) of Section 145 are as follows:

"(a) Failure to file returns, submit information, or pay tax. Any person required under this chapter to pay any estimated tax or tax, or required by law or regulations made under authority thereof to make a return or declaration, keep any records, or supply any information, for the purposes of the computation, assessment, or collection of any estimated tax or tax imposed by this chapter, who willfully fails to pay such estimated tax or tax, make such return or declaration, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, be fined not more than $10,000, or imprisoned for not more than one year, or both, together with the costs of prosecution.

"(b) Failure to collect and pay over tax, or attempt to defeat or evade tax.

3. 26 U.S.C. § 3748(a) (2).

4. Id. (a).

Any person required under this chapter to collect, account for, and pay over any tax imposed by this chapter, who willfully fails to collect or truthfully account for and pay over such tax, and any person who willfully attempts in any manner to evade or defeat any tax imposed by this chapter or the payment thereof, shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, be fined not more than $10,000, or imprisoned for not more than five years, or both, together with the costs of prosecution." 26 U.S.C. §§ 145(a) and (b).

Citing Spies v. United States, 1943, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418, the authoritative interpretation of these two subsections, defendant asserts that the gist of subsection (b) is the filing of a false return and that, since the proof here is that no return at all was filed, the Government has proved only a subsection (a) violation. Defendant is wrong. The Spies case furnishes absolutely no support for such a statement. The theory of the prosecution here is that this is a case of a willful failure to file returns and pay the taxes (which would be enough to sustain a 145(a) misdemeanor conviction), plus evidence of such other affirmative acts as the Spies case said were sufficient to raise the offense to the degree of a felony under 145(b). There the Court explained the difference in this manner:

"The difference between the two offenses, it seems to us, is found in the affirmative action implied from the term 'attempt,' as used in the felony subsection. * * * We think that in employing the terminology of attempt to embrace the gravest of offenses against the revenues Congress intended some willful commission in addition to the willful omissions that make up the list of misdemeanors. Willful but passive neglect of the statutory duty may constitute the lesser offense, but to combine with it a willful and positive attempt to evade tax in any manner or to defeat it by any means lifts the offense to the degree of felony." 317 U.S. at pages 498–499, 63 S.Ct. at page 368.

Obviously, filing a false return is one instance of such affirmative conduct, United States v. Croessant, 3 Cir., 1949, 178 F.2d 96, certiorari denied, 1950, 339 U.S. 927, 70 S.Ct. 626, 94 L.Ed. 1348, but it is not the only instance. In fact, the Spies case states, 317 U.S. at page 499, 63 S.Ct. at page 368:

"By way of illustration, and not by way of limitation, we would think affirmative willful attempt may be inferred from conduct such as keeping a double set of books, making false entries or alterations, or false invoices or documents, destruction of books or records, concealment of assets or covering up sources of income, handling of one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or to conceal. If the tax-evasion motive plays any part in such conduct the offense may be made out even though the conduct may also serve other purposes such as concealment of other crime."

Subjected to the test set out in Spies, we think the Government's evidence here was literally full of "affirmative acts" and "acts of commission" and was thus clearly sufficient to sustain the 145(b) conviction. There was evidence that defendant and his corporations received substantial amounts of income and that no returns were filed. The "willfulness" element is a question of fact, Battjes v. United States, 6 Cir., 1949, 172 F.2d 1; Maxfield v. United States, 9 Cir., 1945, 152 F.2d 593, certiorari denied, 1946, 327 U.S. 794, 66 S.Ct. 821, 90 L.Ed. 1021, and there was ample evidence from which the jury could have inferred it here. Furthermore, there was credible evidence that defendant conducted brokerage accounts in the name of Jeffrey Baker, his brother-in-law; falsely represented to the investigating agents of the Bureau of Internal Revenue that certain books and records of the corporations had been turned over to the purchasers of their properties, Unit-

ed States v. Beacon Brass Co., 1952, 344 U. S. 43, 73 S.Ct. 77; concealed his assets by having his accountant [5] change the records so that they would show his check to the Jeffrey Realty Company as a loan to that company by Jeffrey Baker and made further requests that the accountant make additional alterations in the records so that loans that appeared in his name would show as having been made by members of his family; [6] and used corporate funds for personal items, such as to pay his jockey, to pay for insurance on his horses, to pay for repairs to his home, and to buy a television set. It requires no elaboration to show that these are just the kind of affirmative acts the Supreme Court was talking about in the Spies case.

Defendant would palliate the effects of these acts by assigning other reasons as their causes. But, "Such inferences are for the jury. If on proper submission the jury found these acts [those quoted above] taken together with willful failure to file a return and willful failure to pay the tax, to constitute a willful attempt to evade or defeat the tax, we would consider conviction of a felony sustainable." 317 U.S. at page 500, 63 S.Ct. at page 368.

■ Next, we are told that there is a fatal defect in the Government's proof in that there is no showing of defendant's net worth as a starting point for each taxable year. But no such showing is necessary because this is not a net-worth case. The prosecution relied upon evidence of specific items of *income* which, after allowance for known deductions and exemptions, became net taxable income. Here, the Government did not rely upon bald cash items and let it go at that. Whether the item was cash or a check, it was traced to its source and shown to be income within the legal sense of that term. Thus, elements necessary to a net-worth case are inapplicable here.

■■ Defendant says that there is another gap in the proof because the Government did not allow him all the deductions and exemptions to which he says he is entitled. He argues that to compel him to rebut the Government's prima facie case is to reverse the traditional rule that the prosecution has to prove its case beyond a reasonable doubt. We are satisfied that there has been no such reversal here. Defendant filed no returns and refused to make his records available to the investigating revenue agents.[7] Having reconstructed defendant's income from what material it could unearth, the Government showed substantial net income. Defendant complains, however, that he was not allowed exemptions for his wife and his two children, that he had certain bad debts, charitable contributions, and expenses which are deductible. The trouble is that there is no proof as to these matters or, where there are intimations in the record, the jury did not draw the inference which defendant seeks. The Government made out a case for the jury by showing substantial net income. Of course, defendant could controvert this evidence by testimony that he was entitled, under the law, to certain deductions which the Government did not allow him. United States v. Link, 3 Cir., 1953, 202 F.2d 592. The only testimony he introduced on this point was in attempting to establish certain business expenses. No one would doubt that the jury was not bound to believe the underlying facts upon which he says those deductions are based. Furthermore, even were he credited with those deductions, there would still be substantial amounts of income for each year. That is sufficient, for it is not necessary that the exact amount of tax evaded be proved, United States v. Johnson, 1943, 319 U.S. 503, 63 S.Ct. 1233, 87 L. Ed. 1546; nor is the prosecution required

---

5. In fairness to the accountant, it should be noted that he made the change only after demanding and receiving a letter from defendant authorizing the alteration.

6. This the accountant refused to do, and his services were terminated.

7. The record is rather ambiguous as to whether the books and records were produced a few weeks before the trial pursuant to a subpoena, but, in any event, it is clear that they were not produced before the indictment was returned.

to establish the precise amount which is stated in the indictment. Gendleman v. United States, 9 Cir., 1951, 191 F.2d 993, certiorari denied, 1952, 342 U.S. 909, 72 S. Ct. 302, 96 L.Ed. 680.

Defendant relies upon United States v. Fenwick, 7 Cir., 1949, 177 F.2d 488 and Bryan v. United States, 5 Cir., 1949, 175 F. 2d 223, affirmed 1950, 338 U.S. 552, 70 S.Ct. 317, 94 L.Ed. 335. Both are net-worth cases, and both reversed convictions because, in showing the net worth at the beginning of the year involved, the prosecution did not establish that the defendant did not have other assets which could have been used to make up the increase in net worth which showed up at the end of the year. We do not quarrel with those cases, but they have no relation to our problem. There, the Government established a faulty starting point and asked the jury to infer that the increase in net worth was income. We think it part of the Government's prima facie case to establish, at least, that what it charges against defendant is income for the year involved. It has not established its prima facie case by showing that defendant has some money and then asking the jury to infer that that money is "in-come" for the year involved. Here, the matter was not left to inference. The prosecution proved income in the legal sense.

■ Finally, it is said that the trial judge's refusal to charge one of defendant's requests was reversible error. The point is without merit because, in different words, defendant got substantially the charge he requested.[8] Certainly, one of the prerogatives of a federal trial judge is to phrase his own charge. If it states the applicable law correctly, as this charge did, defendant may not be heard to complain that it offends his literary taste. Barshop v. United States, 5 Cir., 1951, 191 F.2d 286, certiorari denied, 1952, 342 U.S. 920, 72 S. Ct. 367, 96 L.Ed. 688; Wright v. United States, 8 Cir., 175 F.2d 384, certiorari denied, 1949, 338 U.S. 873, 70 S.Ct. 143, 94 L. Ed. 535. The charge requested by defendant, the substance of which was included in the court's instructions, told the jury that a mere failure to file a return would not sustain a conviction here. In view of the offenses charged and the issues as made during the trial, defendant was entitled to no more on that point.

The judgment of the district court will be affirmed.

8. This is what he asked for:

"A person who files no return has made no misrepresentation. He has simply failed to do what the statute requires him to do; but the person who files a willful false return has endeavored to mislead the Government. He creates the appearance of having complied with the law; whereas, his neighbor who has filed no return does no such thing. Not only has he created the appearance of complying but that apparent compliance stands a good chance of remaining unaltered for the tax authorities cannot possibly audit every taxpayer's return every year. This is the reason Section 145(a) is a separate offense from Section 145(b), because under Section 145(b) there must be an affirmative act to create a willful attempt to defeat and defraud."

This is what he got:

"In order to constitute a violation of the statute which denounces this offense there must be a wilful and positive attempt to evade or defeat the tax in some manner or by some means. * * * Any conduct the likely effect of which would be to mislead or conceal may be indicative of an affirmative wilful attempt to evade or defeat a tax due. * * *

"There has been reference made in the course of the trial to another section of this statute which charges as a violation of the law failure to file an income tax. I believe that counsel in his summation admitted that for the years in question, the defendant failed to file an income tax. But that is not the charge here. That which distinguishes the present offense from the offense of failing to file an income tax is the wilfulness and the intent to defraud and defeat the tax. He is not charged for failing to file the report, but he is charged with wilfully attempting to evade or defeat a tax due. Now, the mere fact, as I say, that he failed to file does not constitute a violation of the particular section a violation of which is charged in this indictment."