PEOPLE *v.* NORWOOD.

1. Conspiracy—Crime as Its Object Different Crime Than Conspiracy.

A conspiracy to commit a crime, such as the violation of a statute, is a separate and distinct offense from the crime which it is the object of the conspiracy to commit.

2. Indictment and Information—Conspiracy—Violation of Statute.

An information charging defendants with having conspired to violate the gambling laws charged a crime since the conspiracy was an indictable offense at common law separate and distinct from the object of the conspiracy, the violation of the gambling laws (Act No. 328, §§ 301, 302, 306, 505, Pub. Acts 1931).

3. Conspiracy—Violation of Statutes—Common Law—Punishment.

Since a conspiracy to violate the gambling laws is an indictable offense at common law and no punishment is expressly pro-

vided by statute, the general provision of penal code fixing punishment in such cases is applicable (Act No. 328, §§ 301, 302, 306, 505, Pub. Acts 1931).

4. SEARCHES AND SEIZURES—GAMBLING PARAPHERNALIA—PRESENCE ON PREMISES.

Gambling paraphernalia was properly admitted in evidence in prosecution of defendants who were found on premises used for gambling operations and who do not appear to have been lessees or tenants or to have had any rights in the premises entitling them to raise the question of legality of the search for and seizure of gambling paraphernalia.

5. SAME—WITHOUT WARRANT—EVIDENCE—GAMBLING PARAPHERNALIA.

Seizure of gambling paraphernalia by police officers without a warrant was not illegal where it appears that officers had previously been observing premises before the raid, entered peaceably, saw the gambling paraphernalia in the possession of defendants and that the premises were being used for gambling, hence the gambling paraphernalia was properly admissible in evidence in prosecution for conspiracy to violate the gambling laws (Act No. 328, §§ 301, 302, 306, 505, Pub. Acts 1931).

6. WITNESSES—ONE-MAN GRAND JURY—SCOPE OF IMMUNITY.

A grant of immunity by a one-man grand jury protects the witness from prosecution for any offense concerning which the answer of the witness may tend to incriminate him but does not grant immunity as to offenses subsequently committed (3 Comp. Laws 1929, § 17220).

7. SAME—ONE-MAN GRAND JURY—SELF-INCRIMINATION—EVIDENCE.

The mere fact that a witness testifies before a one-man grand jury does not establish that his testimony would have tended to incriminate him (3 Comp. Laws 1929, § 17220).

8. SAME—ONE-MAN GRAND JURY—SCOPE OF IMMUNITY.

The grant of immunity by a one-man grand jury would not protect the witness from prosecution for offenses about which he was not questioned before the grand jury (3 Comp. Laws 1929, § 17220).

9. CRIMINAL LAW—ONE-MAN GRAND JUROR OR STENOGRAPHER AS WITNESS—EVIDENCE OF IMMUNITY.

On the trial of one charged with a crime as to which he claims to have received a grant of immunity from prosecution while a witness before a one-man grand jury, the defendant is entitled to have the grand juror or his stenographer called to

testify in order to show whether or not the answers given before the grand jury would have tended to incriminate the defendant of the crime charged (3 Comp. Laws 1929, § 17220).

10. SAME—SPLITTING A CONTINUING OFFENSE—CONSPIRACY.

Since a conspiracy to violate existing laws is usually a continuing offense extending over some period of time and the prosecution may charge and prove the offense in any part of such period, where there is no satisfactory proof that the conspiracies charged antedated period covered by the information, the prosecution did not split a continuing offense by amending the information to shorten the period covered to avoid charging defendant with a crime as to which he had been granted immunity from prosecution by one-man grand jury (3 Comp. Laws 1929, § 17220).

11. SAME—CONSPIRACY—EVIDENCE—SUPPRESSED EXHIBITS.

In prosecution of eight defendants for conspiracy to violate the gambling laws, testimony from memory by witness who had been a bookkeeper for one of the defendants that he had prepared payrolls of the gambling businesses under his employer's instructions *held*, under the circumstances, properly admissible where no objection was interposed, notwithstanding the books and records themselves had been suppressed (Act No. 328, §§ 301, 302, 306, Pub. Acts 1931).

12. SAME—REMARKS OF PROSECUTOR.

In prosecution of eight defendants for conspiracy to violate the gambling laws, fact that prosecutor called one of the defendants a liar, although improper, did not constitute reversible error where the term apparently fitted such defendant by his own admission and court struck out the statement and instructed jury to disregard it (Act No. 328, §§ 301, 302, 306, Pub. Acts 1931).

13. SAME—ARGUMENT OF PROSECUTOR.

In prosecution of eight defendants for conspiracy to violate the gambling laws, reference in prosecutor's argument to one of them as a bribe payer *held*, not to have constituted reversible error under the circumstances shown where the court struck out the remark and instructed jury to disregard it (Act No. 328, §§ 301, 302, 306, Pub. Acts 1931).

14. SAME—CONSPIRACY—EVIDENCE.

In prosecution of eight defendants for conspiracy to violate the gambling laws, evidence presented a question of fact for con-

sideration of jury and substantiated its finding of guilty where it appears that all were engaged in the gambling business (Act No. 328, §§ 301, 302, 306, Pub. Acts 1931).

15. SAME—MISCARRIAGE OF JUSTICE.

In prosecution for conspiracy to violate gambling laws, no errors resulting in a miscarriage of justice *held,* to have been made in the trial (3 Comp. Laws 1929, § 17354).

16. SAME—NEW TRIAL.

In prosecution for conspiracy to violate gambling laws, defendants' motion and amended motion for a new trial were properly denied (Act No. 328, §§ 301, 302, 306, Pub. Acts 1931).

Appeal from Recorder's Court for the City of Detroit; Van Zile (Donald), J. Submitted June 14, 1945. (Docket No. 65, Calendar No. 42,599.) Decided October 8, 1945.

Walter Norwood and others were convicted of conspiracy to violate the gambling laws. Affirmed.

*Lewis, Rowlette & Brown* (*George Stone,* of counsel), for appellant.

*John R. Dethmers,* Attorney General, and *Edmund E. Shepherd,* Solicitor General (Brief by *Henrietta E. Rosenthal*), for the people.

STARR, C. J. On jury trial in 1940 defendants were convicted under an amended information containing three counts, each of which charged them with the common-law offense of a conspiracy to violate certain gambling laws of the State.[*] On their motion the convictions were set aside and a new trial granted.

[*] Act No. 328, §§ 301, 302, 306, Pub. Acts 1931 (Comp. Laws Supp. 1940, §§ 17115–301, 17115–302, 17115–306, Stat. Ann. §§ 28.533, 28.534, 28.538).

On retrial by jury in 1942, a police officer who had observed the private residence at 544 Josephine street in the city of Detroit for several days prior to May 28, 1940, testified that he "saw policy men going in and out;" that he knew the people by name and knew they were policy men and that "they were delivering policy in that house." Following this observation, police officers went to the residence on May 28th, and a woman sitting on the porch informed them that the lady of the house was inside. The door was open, and they entered peaceably. They went to the basement and there found and seized gambling paraphernalia and arrested several of the defendants. It is admitted that they made the arrests and seizure without warrants. A search warrant was then issued, and the next day the officers searched the house and seized additional gambling paraphernalia. The other defendants were arrested later, and all were held for trial.

An information was issued charging that defendants "on June 1, 1933, and on divers other days and dates up to and including May 29, 1940," conspired to violate certain gambling laws of the State. In the first trial it developed that on December 6, 1939, defendants Walter Norwood and Harold Hardiman had testified and been granted immunity in grand-jury proceedings involving graft and corruption in Wayne county. The information was then amended by charging the conspiracy period as December 7, 1939, to May 29, 1940. It later developed that Norwood and Hardiman had again testified before the grand jury on April 24, 1940, and again had been granted immunity. The information was then amended to charge the conspiracy period as April 25 to May 29, 1940. During the first trial the information was also amended by striking out all but the three counts mentioned above.

In the present trial a motion to quash the information as to defendants Walter Norwood and Hardiman, because of the immunity granted them in the grand-jury proceedings, was denied. Defendants' motion to suppress the evidence, consisting of the gambling equipment seized at 544 Josephine street, on the ground that the search and seizure were illegal, was also denied. All defendants were again convicted, their motion and amended motion for a new trial were denied, and they were sentenced as follows: Walter Norwood and Hardiman, 1 to 5 years; Robert Davis and Allyne, 6 months to 5 years; Woodward, Plummer, Charlotte Norwood, and Laura Davis, probation for 1 year. Having obtained leave, they appeal.

Defendants first contend that the amended information did not charge a crime. They argue that, because the State statute provides punishment for violation of the gambling laws, the alleged conspiracies to violate these laws do not constitute crimes under Act No. 328, § 505, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 17115–505, Stat. Ann. § 28.773), which provides:

"Any person who shall commit any indictable offense at the common law, for the punishment of which no provision is expressly made by any statute of this State, shall be guilty of a felony, punishable by imprisonment in the State prison not more than 5 years or by a fine of not more than $2,500."

Defendants' contention is without merit, because the alleged conspiracies to violate the gambling laws were crimes separate and apart from the crimes of violation. In *People* v. *Chambers,* 279 Mich. 73, 77, we said:

"A conspiracy to commit a crime is a separate and distinct offense from the crime which it is the object of the conspiracy to commit. 12 C. J. p. 542."

See, also, *People* v. *Ormsby,* 310 Mich. 291; *People* v. *Causley,* 299 Mich. 340; *People* v. *Summers,* 115 Mich. 537.

The conspiracies charged in the information in the present case were indictable offenses at common law, and, as no punishment for such offenses is expressly provided by statute, they come within the provisions of section 505 above quoted. *People* v. *Ormsby, supra.*

We cannot agree with defendants' contention that the search and seizure at 544 Josephine street were illegal. On motion of the prosecutor one Oneida Oates, the owner of these premises, was discharged as a defendant, and there was no showing that the other defendants were lessees or tenants, or that they had any rights in the premises which would entitle them to question the legality of the search and seizure. *People* v. *Bartoletta,* 248 Mich. 499; *People* v. *Azukauckas,* 241 Mich. 182; *People* v. *Anscomb,* 234 Mich. 203. From observation of the residence a police officer became convinced that gambling operations were being conducted there. The officers entered peaceably; they saw gambling paraphernalia in the possession of defendants and that the premises were being used for the conducting of gambling operations. Under the facts and circumstances shown, the search and seizure were legal, and the gambling paraphernalia was properly admissible in evidence. *People* v. *Ormsby, supra; People* v. *Bommarito,* 309 Mich. 139; *People* v. *Harris,* 300 Mich. 463; *People* v. *Cona,* 180 Mich. 641.

Defendants Walter Norwood and Harold Hardiman contend that the immunity granted them in the pending grand-jury proceedings extended through the full period of the conspiracies charged in the amended information and, therefore, that the in-

formation should have been quashed as to them. The statute (3 Comp. Laws 1929, § 17220 [Stat. Ann. § 28.946]), under which immunity had been granted, provides:

"No person shall upon such inquiry be required to answer any questions the answers of which might tend to incriminate him except upon motion in writing by the prosecuting attorney which shall be granted by such justice or judge, and any such questions and answers shall be reduced to writing and entered upon the docket or journal of such justice or judge, and no person required to answer such questions upon such motion shall thereafter be prosecuted *for any offense concerning which such answers may have tended to incriminate him.*"

As hereinbefore mentioned, the information had been amended during the first trial to charge the conspiracy period as April 25th to May 29, 1940. Norwood and Hardiman claim that they also testified before the grand jury June 19th and 20th, 1940. Relative to the immunity granted them, the court said in the present trial:

"Let me state, * * * for the benefit of the record, that in the last trial * * * both Norwood and Hardiman, had been questioned by the grand jury in April, 1940, and * * * Judge Ferguson said that this immunity * * * [was] extended up to and through April 24, 1940. So * * * the information was amended, so that the initial date of the conspiracy was named as April 25, 1940. Later * * * it transpired, by certain testimony that was given, that * * * Hardiman and Norwood, again testified before the grand jury some time in June (1940). * * * That matter was again taken up with Judge Ferguson and * * * (he) said that the immunity did not extend to June * * * when they were again before the grand jury. * * *

"When I charge the jury, I will. charge that immunity was given by Judge Ferguson to both these defendants   *   *   *   through April 24th."

These two defendants testified before the grand jury under grants of immunity, and under the statute they could not thereafter be prosecuted for any offense concerning which their answers before the grand jury might have "tended to incriminate" them. However, there was no claim or showing that their answers before the grand jury would have incriminated them of the subsequently-committed conspiracies to violate the gambling laws charged in the present case. The mere fact that they testified before the grand jury does not establish that their testimony would have tended so to incriminate them. The grants of immunity would not protect them from prosecution for offenses about which they were not questioned before the grand jury. In the present trial they could have called the grand juror or his stenographer and shown whether or not their answers before the grand jury would have "tended to incriminate" them of the conspiracies charged. *People* v. *McCrea*, 303 Mich. 213, 245, 246; *People* v. *O'Neill*, 107 Mich. 556.

Furthermore, the testimony of Norwood and Hardiman before the grand jury could relate only to past offenses and, therefore, could not incriminate them of future offenses. The immunity granted them on December 6, 1939, and April 24, 1940, did not protect them from the subsequently-committed conspiracies charged in the amended information. In *People* v. *Woodson*, 309 Mich. 391, 397 (157 A. L. R. 419), we said:

"The immunity statute expressly protects a witness against prosecution for any offense concerning which his answers may tend to incriminate him, *but it does not protect him from an offense subsequently committed.*"

Defendants Norwood and Hardiman further claim that by amending the information to charge the conspiracy period as beginning April 25, 1940, the prosecution split a continuing offense and thereby placed them twice in jeopardy. We find no merit in this claim. There was no satisfactory proof that the conspiracies charged antedated April 25, 1940. Furthermore, a conspiracy to violate existing laws is usually a continuing offense, extending over some period of time, and the prosecution may charge and prove the offense in any part of such period.

Defendants next contend that it was reversible error to admit the testimony of plaintiff's witness, George Washington, a bookkeeper employed by defendant Walter Norwood. Police officers had seized gambling paraphernalia and books and records at the Norwood hotel, which was conducted by said Norwood, but in the present trial this evidence was suppressed on the ground that the search and seizure were illegal. Witness Washington testified from memory that he prepared the payroll records of the gambling businesses referred to as "policy house" and "clearing house," under Norwood's instruction and from information furnished by him. Defendants argue that because the books and records were suppressed, Washington could not testify from memory relative to them. There was no objection to this testimony during the trial, and its admissibility was first questioned in defendants' amended motion for a new trial. Under the facts and circumstances shown, Washington's testimony was properly admissible.

Defendants claim that certain remarks of the prosecutor constituted reversible error. Defendant Allyne took the stand in his own defense and on examination admitted that he had lied in a written statement given the prosecutor's office. After this

admission, the prosecutor referred to him as "a liar." The court struck out the statement and instructed the jury to disregard it. The prosecutor's remark was improper, but in view of Allyne's admission, the term apparently fitted him, and we cannot say that it was reversible error. *People* v. *McNutt*, 220 Mich. 620; *People* v. *Shoemaker*, 131 Mich. 107. In his argument the prosecutor referred to defendant Walter Norwood as a "bribe payer." The court struck out this remark and instructed the jury to disregard it. Under the facts and circumstances shown, the remark was not reversible error.

It is unnecessary to discuss in detail the testimony relative to defendants' connection with gambling operations and the conspiracies charged. The record clearly indicates that they were all engaged in the gambling business. Questions of fact were presented for jury determination, and we are satisfied that there was material and ample evidence from which the jury, as judge of the facts, could find all defendants guilty beyond a reasonable doubt of the crimes charged.

We are convinced that there were no errors in the trial resulting in a miscarriage of justice.* Defendants' motion and amended motion for a new trial were properly denied. Other questions do not require consideration. The convictions are affirmed.

NORTH, BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred. The late Justice WIEST took no part in the decision of this case.

---

* See 3 Comp. Laws 1929, § 17354 (Stat. Ann. § 28.1096).—REPORTER.