UNITED STATES of America,
Plaintiff,

v.

Delphine Florence LeMAY, Defendant.

Crim. No. 9803.

United States District Court,
D. Montana,
Havre-Glasgow Division.

Aug. 20, 1971.

Otis L. Packwood, U. S. Atty., Keith L. Burrowes, Asst. U. S. Atty., Billings, Mont., for plaintiff.

Charles F. Moses, Sandall, Moses & Cavan, Billings, Mont., for defendant.

## ORDER

BATTIN, District Judge.

Defendant moves the court to dismiss the indictment against her on the ground that the indictment will place her in double jeopardy, contrary to the Fifth Amendment to the United States Constitution. To properly consider this motion, an examination of the relevant facts is essential.

An indictment charging defendant, an Indian, with the murder of one Matthew E. Black Dog, Jr., an Indian, was filed on December 3, 1970. The indictment charged that the offense took place "at Poplar, in the State and District of Montana, and within the exterior boundaries of the Fort Peck Indian Reservation." Defendant pleaded not guilty and a trial date was set.

On that date a jury was impaneled and sworn and the Assistant United States Attorney began his opening statement. He stopped before completion of the opening statement and moved the court to amend the indictment by replacing the word "Poplar" with "Brockton". Thus, the offense charged would have been alleged to have taken place "at Brockton, in the State and District of Montana, and within the exterior boundaries of the Fort Peck Indian Reservation."

Defendant objected to this motion and on the basis of Carney v. United States, 163 F.2d 784 (9th Cir. 1947), it was denied. Outside the hearing of the jury, the following colloquy occurred between the court and counsel:

"THE COURT: * * * Is the Government ready to proceed with the case?

MR. BURROWES: No, Your Honor.

THE COURT: I will entertain a motion to dismiss.

MR. MOSES: Your Honor, comes now the Defendant, Delphine Florence Lemay, it appearing in open court that the Government is not ready to proceed with the case, and the jury having been impaneled, we respectfully move the Court to dismiss the charges against this defendant.

THE COURT: Does the Government also make a motion to dismiss?

MR. BURROWES: Yes, Your Honor, we join in the motion to dismiss.

THE COURT: Also so that nobody is—of course, this might come up at a later time, but I will hear the argument then. The court is of the opinion, after very scanty research, that if your motion to dismiss is granted, that undoubtedly the Government will return to the next grand jury to seek indictment against this defendant. I am of the opinion at this point that a plea of double jeopardy would not lie.

MR. MOSES: Your Honor, I have not had the opportunity to research that question either, but I would not want to make any proceedings in this Court prejudicial to this defendant, as to waiving that in bar at a later time.

THE COURT: It would not, and I can assure counsel if a grand jury were to re-indict this defendant, she would have the same counsel, who was adequately representing her at the present time. And the Court would entertain any motion that was properly made concerning the sufficiency of the indictment, or whether there was double jeopardy.

MR. MOSES: Yes.

THE COURT: The motion of the Government to dismiss the case will be granted. * * * "

At the conclusion of this exchange, the jury was recalled to the courtroom and dismissed by the court.

On March 25, 1971, another indictment was filed, charging the same of-

fense as was charged in the indictment filed December 3, 1970. The only change was that the town was changed from Poplar to Brockton. Defendant then made the motion presently before the court.

■ The basic issue presented is whether jeopardy had attached at the time the jury was dismissed, thereby barring further proceedings for the same offense. The initial requirement to support a plea of double jeopardy is that the offense charged in both indictments was the same in law and fact. Lopez v. United States, 17 F.2d 462 (1st Cir. 1926). This raises the initial issue.

■ However, before jeopardy can attach in a proceeding, the indictment must be sufficient to support a conviction. If it is not sufficient, then jeopardy does not attach upon the swearing of the jury. See, e. g., United States v. Oppenheimer, 242 U.S. 85, 86, 37 S.Ct. 68, 61 L.Ed. 161 (1916); Amrine v. Tines, 131 F.2d 827 (10th Cir. 1942); Wolkoff v. United States, 84 F.2d 17 (6th Cir. 1936); United States v. Narvaez-Granillo, 119 F.Supp. 556 (S.D.Cal. 1954) (quashing of a bad indictment is no bar to a prosecution upon a good one.)

Rule 7(c), F.R.Crim.P., 18 U.S.C., requires that "[t]he indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." Section 1153, 18 U.S.C., provides that any Indian who commits against another Indian or other person various crimes, including murder, shall be subject to the same laws and penalties as all other persons committing those crimes within the exclusive jurisdiction of the United States.

In Gourneau v. United States, 390 F. 2d 320 (8th Cir. 1968), the court held that merely naming the Indian Reservation within which the crime took place was sufficient to establish jurisdiction. See also, United States v. Bujese, 371 F.2d 120 (3rd Cir. 1967); Gunville v.

United States, 386 F.2d 184 (8th Cir. 1967); Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910).

The purpose of an indictment is to inform a defendant of the charges against him, in order that he be able to defend against the prosecution and in order that he be able to plead the conviction or acquittal in the case as a bar against future prosecution for the same offense. United States v. Debrow, 346 U.S. 374, 74 S.Ct. 113, 98 L.Ed. 92 (1953); Bartell v. United States, 227 U.S. 427, 33 S. Ct. 383, 57 L.Ed. 583 (1913). In Scheff v. United States, 33 F.2d 263 (8th Cir. 1929), the court held that

"[I]t is the presence of some identifying earmarks, and not any particular one, that is required [to make the indictment sufficient]. This is especially true, in the absence of a request for a bill of particulars." *Scheff*, at 264.

■ In testing the sufficiency of an indictment, the Federal courts have held that surplusage in an indictment which is not proved by the prosecution will not create a fatal variance. Hovermale v. United States, 5 F.2d 586 (4th Cir. 1925). However, if the surplusage, unproved by the prosecution, has the effect of misleading the defendant as to the actual offense against which he is defending, the indictment is incurably invalidated. Goulson v. United States, 16 F. 2d 44 (6th Cir. 1926).

The problem of variances and errors in indictments has been before the courts often. In Boyce Motor Lines v. United States, 342 U.S. 337, 72 S.Ct. 329, 96 L.Ed. 367 (1952), the United States Supreme Court, upholding the Circuit Court of Appeals' reversal of the District Court, found that "no more than a reasonable degree of certainty can be demanded" in an indictment, because of the practical limit on specificity. Of note, however, is the language of the District Court, 90 F.Supp. 996 (D. N.J.1950):

"An indictment must charge an offense with a reasonable degree of cer-

tainty so that the accused may be informed as to the nature of the offense against him.

"The surplusage [in the indictment] will ordinarily not affect an indictment and may be disregarded, but where, as here, it creates an ambiguity, it should not be disregarded." *Boyce,* at 1000.

Although the Supreme Court did not find that the particular surplusage in the indictment in *Boyce* was misleading, the theory of the District Court is proper.

■ In Ledbetter v. United States, 170 U.S. 606, 18 S.Ct. 774, 42 L.Ed. 1162 (1898), the Supreme Court stated, with regard to variances between the allegations and proof:

"While in this country it is usual to state the town as well as the county [in the indictment], it has not been generally deemed necessary to do so, and most authorities assume that an allegation is sufficient after verdict which shows it to have been done within the jurisdiction of the court * * * (citing cases.) Indeed, an indictment charging the offense to have been committed in one town is supported by proof that it was committed in a different town within the same county, and within the jurisdiction of the court * * * (citing cases.)" *Ledbetter,* at 613–614, 18 S. Ct. at 776–777. See also, United States v. Ansani, 240 F.2d 216 (7th Cir. 1957).

It is the opinion of the court that the variance between the allegation, in the first indictment, that the offense took place in Poplar and the proof, which would have shown that the offense occurred in Brockton, would have been immaterial and would not have misled the defendant. Therefore, the first indictment was sufficient to support a conviction of the offense charged.

If an indictment is sufficient to support a conviction, jeopardy is held to attach when a jury is impaneled and sworn. Crawford v. United States, 109

U.S.App.D.C. 219, 285 F.2d 661 (1960), citing Wade v. Hunter, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949). There are, however, exceptions to this general rule. In United States v. Perez, 9 Wheat. 579, 22 U.S. 579, 6 L.Ed. 165 (1824), the Supreme Court of the United States held that discharge of the jury after they were unable to reach a verdict did not bar a future trial for the same offense. In Wade v. Hunter, *supra,* the Court relying on the *Perez* decision held that the double jeopardy provision of the Fifth Amendment did not require that a defendant be permitted to go free in every case in which a trial failed to end in a final judgment. The Court cited the *Perez* language, which indicated that, if a manifest necessity for dismissal of the jury prior to a final verdict existed, there would be no bar to a future trial for the same offense.

The manifest necessity for dismissal of the jury without a verdict was found in Brock v. North Carolina, 344 U.S. 424, 73 S.Ct. 349, 97 L.Ed. 456 (1953), in the refusal of the state's witnesses to testify against the defendant. In affirming the trial court's denial of the defendant's plea of double jeopardy, the Court said,

"This court has long favored the rule of discretion in the trial judge to declare a mistrial and to require another panel to try the defendant if the ends of justice will best be served." *Brock,* at 427, 73 S.Ct. 349, at 350.

In United States v. Chase, 372 F.2d 453 (4th Cir. 1967), the defendant moved for a mistrial on the basis of jury prejudice from a newspaper article found in the jury room. A new trial was granted and one of the jury-trial defendants moved for dismissal on the basis of double jeopardy. Another of the jury-trial defendants did not move for a mistrial and neither of the non-jury trial defendants asked for severance of the case. The Court there found a necessity in dismissing the case as to all of the defendants, both jury and non-jury, because of the effect on the defendants on a jury trial of any deci-

sion rendered as to the defendants on the non-jury trial.

The finding of a manifest necessity is not automatic, however. In Cornero v. United States, 48 F.2d 69 (9th Cir. 1931), the United States Attorney failed to have his witnesses present for the trial. The court dismissed the jury and a new jury was later impaneled for trial. The defendant thereupon pleaded that he was placed in double jeopardy. The Ninth Circuit recognized that jeopardy attaches when the jury is impaneled, with certain exceptions. It denied the Government's claim that this particular case fell within those exceptions.

The court, relying on the fact that the District Attorney had suggested the impaneling of the jury, knowing that his witnesses were not present, said:

"We are here dealing, however, with a fundamental right of a person accused of crime, guaranteed to him by the Constitution, and such right cannot be frittered away or abridged by general rules concerning the importance of advancing public justice * * * [N]o court has gone to the extent of holding that, after the impanelment of the jury for the trial of a criminal case, the failure of the district attorney to have present sufficient witnesses, or evidence to prove the offenses charged, is an exception to the rule that the discharge of a jury after its impanelment for the trial of a criminal case operates as a protection against a retrial of the same case." Cornero, at 71.

The Supreme Court in Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963), upheld the ruling of the Ninth Circuit Court of Appeals in the Cornero case, quoting the above language in its opinion. In view of this precedent, the issue to be resolved in the instant case is whether there existed a manifest necessity, within the meaning of Wade, for dismissal of the jury or whether the case falls within the confines of Downum and Cornero.

Three factors weigh heavily in deciding this issue. The United States Attorney drew the indictment and should have known the offense occurred in Brockton and not Poplar. The United States Attorney could have dismissed the indictment and obtained a correct indictment before the jury was impaneled and sworn, without any prejudice to his case. United States v. Kimbrew, 380 F. 2d 538 (6th Cir. 1967). The first indictment would have supported a conviction if the United States Attorney had proceeded with his case, since the verdict would have cured the variance and the variance would not have been misleading to the defendant. Ledbetter v. United States, supra; United States v. Ansani, supra.

When these facts are considered, the theory of the United States Supreme Court in United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971), must be considered in determining whether a manifest necessity existed for dismissal of the jury without a verdict. In that case the Court held that in the absence of a motion for dismissal by defendant the rule of Perez is a

" * * * command to trial judges not to foreclose the defendant's option [to have the original jury decide his fate] until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings." Jorn, at 485, 91 S.Ct. at 557.

The Court distinguished the actions of the trial court in Jorn from those of the trial court in Gori v. United States, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961). In Gori, the trial court was held to have acted within its discretion in stopping the trial when it appeared to it that the prosecution's improper questioning would seriously prejudice defendant. In Jorn, on the other hand, the trial court dismissed the jury so that government witnesses could confer with their attorneys before answering more questions, even though the prosecution advised the court that the witnesses had

been fully advised of their right to refuse to testify where their answers could be self-incriminating. The trial court then dismissed a subsequent information against the same defendants because of former jeopardy.

In comparing the facts of *Jorn* with those of *Gori*, the Court found that under any circumstances the action of the trial court in *Jorn* was not taken for the benefit of the defendant, as it had been in *Gori*. Therefore, the ruling in *Gori* was not controlling.

In regard to the issue of abuse of discretion by the trial court, the *Jorn* Court said:

> "Reprosecution after a mistrial has unnecessarily been declared by the trial court obviously subjects the defendant to the same personal strain and insecurity regardless of the motivation underlying the trial judge's action." *Jorn*, 400 U.S. at 483, 91 S.Ct. at 556.

Finally, the Court concluded that the trial court abused its discretion in discharging the jury without the consent of the defendant and that his action was therefore a bar to further prosecution.

In terms of the *Gori* decision, the dismissal of the first indictment in the instant case cannot be said to have been for the benefit of the defendant, nor to have been necessary to prevent an injustice. *Gori*, 367 U.S. at 368, 81 S.Ct. 1523. Rather, it was done only after the United States Attorney announced that he was not ready to proceed. On the basis of the Supreme Court decisions, including *Jorn*, to allow the defendant to be prosecuted on the new indictment, a "manifest necessity" must have existed for the dismissal. Unless this necessity existed, the Fifth Amendment prevents a trial on the new indictment.

As stated in *Wade*, there is no rigid rule to determine when former jeopardy will bar further prosecution. Each case must be decided after a careful consideration of all its facts.

The facts that must be considered in this case prevent the finding of a manifest necessity. The error in the indictment was not misleading to the defendant and, since the whole record is available to defendant, a conviction would not have left her open to additional charges for the same offense. In addition, the Government, which originally drew the indictment, could have moved for dismissal of the indictment before the jury was sworn and impaneled without endangering prosecution on a corrected indictment issued by a grand jury.

Thus, the Government allowed two permissible alternatives for correcting the error in the indictment to go unused and chose the one method which was closed to it. Rather than showing a "manifest necessity" for dismissal of the jury, these facts appear to bring the case within the *Downum* decision. As in *Downum*, the prosecution allowed the jury to be sworn with knowledge that it did not have a proper indictment and that the proof would be different from the facts charged.

If, however, the defendant can be said to have agreed to the dismissal of the jury, then she waived her right to claim double jeopardy on the second indictment. Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957); Raslich v. Bannan, 273 F.2d 420 (6th Cir. 1959); Haugen v. United States, 153 F.2d 850 (9th Cir. 1946).

In United States v. Armco Steel Corp., 252 F.Supp. 364 (S.D.Cal.1966), the court held that the right of the defendant to not be placed in double jeopardy can be waived, but that it must be shown that there was an intentional relinquishment of a known right or privilege. Citing Himmelfarb v. United States, 175 F.2d 924 (9th Cir. 1949).

In *Himmelfarb*, the Ninth Circuit Court of Appeals held that "[i]n the absence of express authority, an attorney has no power to surrender substantial

legal rights of his client." *Himmelfarb,* at 931. The court went on to add that such consent should appear on the minutes and that the absence of rejection of the waiver does not preclude the defendant from pleading double jeopardy. See also, United States v. El Rancho Adolphus Products, Inc., 140 F.Supp. 645 (M.D.Pa.1956), aff. 3 Cir., 243 F.2d 367.

A review of the record reveals that the defendant did not specifically waive her right to protection against double jeopardy and rather that her counsel specifically stated that he wished not to be considered as having made any proceedings which would waive the plea of double jeopardy.

The motion by defendant to dismiss the original indictment was based on the failure of the Government to proceed with the case. The court granted the motion by the Government to dismiss rather than the motion by the defendant. Therefore, the defendant cannot be said to have concurred in the dismissal of the jury without a verdict so as to have waived her right to plead double jeopardy to a later indictment on the same offense. Defendant's motion must be treated as a motion to dismiss for failure to prosecute.

It is the opinion of the court, therefore, that the original indictment was sufficient to support a conviction on the proof which would have been offered, that the defendant would not have been misled nor placed in danger of conviction twice for the same offense, that there was not a manifest necessity for the motion of the United States to dismiss, so as to outweigh the guarantee of the Fifth Amendment against double jeopardy, and that the defendant did not concur in the motion of the United States to dismiss the indictment.

It is therefore ordered and adjudged that the motion of the defendant is granted and the charges against her are dismissed.