**UNITED STATES of America, Plaintiff,**

v.

**Masaichi AJIMURA, and Yuriko Ajimura, Defendants.**

**Crim. No. 75–0042.**

United States District Court, D. Hawaii.

March 16, 1978.

William J. Egger III, Asst. U. S. Atty., Harold M. Fong, U. S. Atty., Honolulu, Hawaii, for plaintiff.

David C. Schutter, Schutter, O'Brien & Weinberg, Honolulu, Hawaii, for defendant Masaichi Ajimura.

Stanley Y. Mukai, Mukai, Ichiki, Raffetto & MacMillan, Honolulu, Hawaii, for defendant Yuriko Ajimura.

## DECISION ON MOTIONS TO BAR RETRIAL

SAMUEL P. KING, Chief Judge.

In April 1975, the Grand Jury indicted Masaichi Ajimura and his wife, Yuriko Ajimura, on three counts of tax evasion.[1] According to the indictment, the defendants had jointly reported no taxable income for 1968, 1969, and 1970, when their taxable income had been $9056.31, $25,799.36, and $20,462.85, respectively. Accordingly, their tax payments would have been $1733.32, $5963.10, and $4641.31, respectively. The defendants retained separate counsel.

The present question stems from the events of July 6, 1977, the day trial without a jury began before the Honorable Dick Yin Wong. The Government had completed direct examination of Stanley Kashiwai, the second of fifteen witnesses. Like that of the first witness, Kashiwai's testimony was concerned only with Mr. Ajimura's net worth. Since the Government had not begun to show that Yuriko Ajimura might have knowingly joined in filing fraudulent tax returns, her husband's attorney had been the more active of the two defense attorneys. Then came cross examination. Since Kashiwai had testified on direct examination that Masaichi Ajimura lent someone $5000, the defense began developing testimony on that and other loans. The narrative seemed incredible to the court. After warning counsel that it was "not buying too much of this stuff," the court eventually allowed the determined defense counsel to proceed.[2] Within a short while,

1. 26 U.S.C. § 7201 (1970): "Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution."

2. MR. SCHUTTER: . . . we have some $12,000, minimum, in loans made by Mr. Ajimura during a period of time all in cash.

THE COURT: Well, I'm not too sure about that because one question you asked was whether there was a loan to a Mr. Kodani in

the amount of $5,000 and this person said: Yes, and I don't know what his basis for the answer is. Does he know anything about the loan or is he just responding affirmatively to a question that you put?

MR. SCHUTTER: I've got a problem, Your Honor. If a witness testifies affirmatively that he knows of a $5,000 loan_ _ _

THE COURT: Well, how does he know about it?

MR. SCHUTTER: Okay. You know, that's_ _ _

THE COURT: I think there's a credibility problem here. I mean_ _ _

MR. SCHUTTER: I'm sorry, Your Honor, I'm getting frustrated. That's a perfectly proper

exchanges between the court, defense counsel, and the Assistant United States Attorney, William J. Eggers III, precipitated a motion for mistrial by the attorney for Mr. Ajimura.

> *MR. SCHUTTER:* I apologize for this Your Honor, but for the record I ask for a mistrial on the ground that the court's prejudice has clearly been displayed for the last 45 minutes in this matter.
>
> *THE COURT:* The motion for mistrial is granted. For the record, I'm sick and tired of counsel bickering and bantering between each other. I see no reason for the position that Mr. Schutter has taken in this case and Mr. Eggers has also made some objections which are uncalled for. However, Mr. Eggers has not gone so far as to complain about the actions of Mr. Schutter. I think Mr. Schutter is just playing a game in this court and I don't think this court should tolerate such actions.
>
> This matter will be set for a new trial. Court stands in recess.

Before any of the attorneys could reply, Judge Wong left the bench.

■ On the grounds of former jeopardy, the defendants have moved to bar their retrial. They present an uncommon but unnovel question, for premature termination of a nonjury trial is a recusal, not a mistrial. *Minter v. State,* 122 Ga.App. 695, 178 S.E.2d 335 (1970). Furthermore, although cases concerning the premature termination of trial involve juries, their principles are equal to the question of former jeopardy presented here. *Cf. Lee v. United States,* 432 U.S. 23, 31, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977) (Dismissal of indictment after bench trial but before judgment was functionally indistinguishable from a mistrial and therefore governed by established principles of double jeopardy.) First, jeopardy attaches once the court sitting without a jury has begun to hear evidence. *United States v. Hill,* 473 F.2d 759, 761 (9th Cir. 1972). Second, the fifth amendment embraces the defendant's right "to have his trial completed by a particular tribunal." *United States v. Jorn,* 400 U.S. 470, 484, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971). Since the values underlying the double jeopardy clause of the fifth amendment—avoiding the financial, physical, and emotional burdens of successive prosecutions and the increased possibility of convicting the innocent by retrying him—do not depend upon the presence of a jury, that constitutional protection must also embrace a defendant's right to have his bench trial completed by a particular judge. *Freeman v. United States,* 227 F. 732, 741 (2d Cir. 1915).

■ Mistrial and recusals may be declared either sua sponte or upon a defendant's request or consent. These two categories of prematurely terminated trials are governed by distinct tests. *United States v. Dinitz,* 424 U.S. 600, 608, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). On the one hand, sua sponte declarations do not bar retrial if there is manifest necessity. *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824). On the other hand, a defendant's request or consent permits retrial so long as neither the prosecutor nor

---

cross-examination question for Mr. Eggers to ask, Your Honor, but it does not affect, until and unless it's asked and the answer is unsatisfactory, the evidentiary value of what has already been given.

THE COURT: Well, I tell you, Mr. Schutter, in order to save time I'm going to allow you the questions, but I'm going to put you on notice that so far I'm not buying too much of this stuff.

MR. SCHUTTER: I haven't started too much of it, Your Honor. This is the first witness___

THE COURT: So, go right ahead.

MR. SCHUTTER: Well, a statement like that, Your Honor, is just like convicting the defendant and saying: Why bother with the evidence.

Why don't you sit down and go home, Mr. Schutter.

THE COURT: No, I'm just saying that, for example, your $5,000, I'm not convinced that a loan of $5,000 was made to Mr. Kodani just purely on the answer given by this witness to your question.

MR. SCHUTTER: There's a substantial amount of case authority that the government is bound by the testimony of a witness they put on, but if Your Honor wishes to ignore that and say you're not convinced by the testimony___

THE COURT: Well, there's also the problem of whether the trier of the fact is going to believe everything a witness says. But, go ahead, Mr. Schutter.

the judge had intended by his conduct to provoke the defendant. *United States v. Dinitz,* 424 U.S. at 610, 96 S.Ct. 1075; *United States v. Jorn,* 400 U.S. at 485, 91 S.Ct. 547.

█ As to Yuriko Ajimura, the question of retrial is governed by the test of manifest necessity. Her attorney did not move for mistrial, and since the court's response to the motion afforded no opportunity for objection, her silence cannot be implied consent. Counterpoised against the defendant's rights is the "public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial [tribunal]." *Arizona v. Washington,* —— U.S. ——, ——, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1978). During the course of a criminal trial, a judge may discover grounds for withdrawing the case from his consideration. *See* 28 U.S.C. § 455 (Supp. V 1975). Because manifest necessity is not "a standard that can be applied mechanically or without attention to the particular problem confronting the trial judge," *Arizona v. Washington,* 98 S.Ct. at 830, I decline to consider the abstract question whether recusal under section 455(a) or (b) is manifest necessity per se.

█ The absence of a jury compounds a trial court's already difficult task of governing a criminal trial. While sitting impartially to determine the proper course of trial, the court must also decide guilt or innocence. Unlike a jury, which sits mute, the court is constantly tempted to foreclose seemingly incredible testimony or tiring lines of questioning. Despite a court's wide discretion under evidentiary rules to terminate redundancies or unproductive inquiries, both the prosecution and the defense must be afforded their fair opportunity to present their evidence. More important, where they appear to brush the bounds by their zealous representation, a court considering recusal must "temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate." *United States v. Jorn,* 400 U.S. at 486, 91 S.Ct. at 558.

█ Justice Black once observed that "[j]udges . . . remain human even after assuming their judicial duties. Like all the rest of mankind they may be affected from time to time by pride and passion, by pettiness and bruised feelings, by improper understanding or by excessive zeal." *United States v. Green,* 356 U.S. 165, 198, 78 S.Ct. 632, 651, 2 L.Ed.2d 672 (1958) (Black, J., dissenting). As to Yuriko Ajimura, I find that the recusal here was not justified by that high degree of necessity which justifies retrial. As to Masaichi Ajimura, the record before me does not adequately support claims that the trial court engaged in conduct intended to goad the defense into a request for a mistrial. The worst that can be inferred is that Judge Wong reaffirmed Mr. Justice Black. Having moved for a "mistrial," Mr. Ajimura may be retried.