STATE OF HAWAII, Plaintiff-Appellee, *v.* BARBARA JEAN MARTIN, also known as Barbara Jean Alohalani Rodrigues and Barbara Jean Eberly, Defendant-Appellant

NO. 6934

AUGUST 19, 1980

RICHARDSON, C.J., OGATA, MENOR, LUM AND NAKAMURA, JJ.

*Per Curiam*. Defendant-Appellant Barbara Jean Martin appeals from a judgment and sentence entered upon her conviction, after a jury-waived trial, of a violation of HRS § 708-831(1)(b), Theft in the First Degree.

Defendant was initially indicted in 1977 under the foregoing statute for having wrongfully obtained public assistance monies exceeding $200 from the State of Hawaii by deception as to her marital status and the employment earnings of herself and her husband from September 1, 1972 through January 30, 1976. This indictment was dismissed on defendant's motion.

The State subsequently obtained a second indictment that covered the period from January 1, 1973 through January 30, 1976, pursuant to the same statute, containing substantially

the same charges[1] but with an additional allegation that defendant also received social security payments. Defendant was convicted under this indictment.

Prior to and during trial, defendant moved to dismiss the second indictment, asserting she should have been charged with a violation of the misdemeanor statute specifically relating to welfare fraud, HRS § 346-34, rather than the more general felony statute covering theft. The motions were denied and the circuit court found her guilty as charged.

Defendant contends the court erred in several respects, including the denial of the foregoing motions. Finding no error, we affirm the judgment and sentence.

I.

Defendant first applied for public assistance under the Aid for Families with Dependent Children (AFDC) program in January of 1970. She was then a divorced mother of two children. Another child was born to her in June of 1970, and defendant married that child's father in September of 1971. Assistance payments were made to her by the State from 1970 through January, 1976. As a condition for the continued receipt of payments after her initial application, defendant was required to file semi-annual statements "of facts supporting continued eligibility for aid to families" with children. On each statement[2] she indicated the father of her youngest child was absent from the home, she had no income, and she was

---

[1] The indictment charged defendant with having wrongfully obtained "property of the State of Hawaii, to-wit, public assistance monies, the total value of which exceeds $200.00, by deception as to her marriage, her employment earnings, her receipt of social security benefit payments and deception as to the employment earnings and whereabouts of her husband, . . ." during the period of January 1, 1973 through January 30, 1976.

[2] Statements of facts supporting continued eligibility were filed in November, 1971, May, 1972, March and August, 1973, March and September, 1974, and March and September, 1975.

not receiving any social security payments. Defendant also neglected to disclose her marriage at any relevant time to the Department of Social Services and Housing, although obligated to do so.[3]

The following issues are raised for this court's consideration:

(1) Whether the State was required to charge defendant under laws existing before January 1, 1973, the effective date of the Hawaii Penal Code, for conduct which commenced prior to that date but continued through 1975 and into 1976;

(2) Whether the State was required to charge her under the specific welfare fraud statute, HRS § 346-34, rather than the general theft statute, HRS § 708-831(1)(b);

(3) Whether the dismissal of the first indictment caused jeopardy to attach, barring her prosecution under a second indictment on substantially similar charges;

(4) Whether the compulsion applied to secure handwriting exemplars from her violated her constitutional rights; and

(5) Whether the State met its burden of proving that she received social security payments.

## II.

### A.

### PROSECUTION FOR CONTINUING OFFENSE

Defendant maintains that the offense she was convicted of was a continuing crime with elements thereof occurring before January 1, 1973, the effective date of HRS § 708-831(1)(b). She therefore argues she should have been charged

---

[3] Defendant was given a brochure which stated that welfare recipients are "responsible for supplying correct information regarding . . . marriage." A welfare case worker reviewed the contents of this pamphlet with defendant.

under prior existing law in accord with HRS § 701-101(1).[4] We agree the offense was a continuing one but disagree with the contention that she could only have been prosecuted under the prior statute.

In *People v. Howes,* 99 Cal. App. 2d 808, 222 P.2d 969 (1950), a California court held the applicable test in determining whether there is a continuing crime "is whether the evidence discloses one general intent or discloses separate and distinct intents." It found if "there is but one intention, one general impulse, and one plan, even though there is a series of transactions, there is but one offense." *Id.* at 818-19, 222 P.2d at 976; *People v. Saling,* 48 Cal. App. 3d 724, 122 Cal. Rptr. 1 (1975); *People v. Neder,* 16 Cal. App. 3d 846, 94 Cal. Rptr. 364 (1971).

A similar rationale was applied in *Dawson v. Superior Court,* 138 Cal. App. 2d 685, 292 P.2d 574 (1956). There, the defendant received welfare payments to which she was not entitled by failing to disclose her employment status. She filed renewal applications and continued to receive payments although employed and receiving income. She was charged with two counts of grand theft rather than several petty thefts. The court held the charges proper, stating that "where a person intends by his false representations to initiate an act which will cause him to receive illegally various sums of money, it is far more reasonable to consider the whole plan rather than its component parts." *Id.* at 689, 292 P.2d at 577. *Accord, People v. Bailey,* 55 Cal. 2d 514, 360 P.2d 39, 11 Cal. Rptr. 543 (1961). *Contra, People v. Lofton,* 73 Misc. 2d 285, 340 N.Y.S.2d 984 (1973).

We have had no prior occasion to determine what constitutes a continuous offense and are persuaded that the California rule enunciated in *Howes, supra,* provides logical

---

[4] That section provides in relevant part:

Prosecutions for offenses committed before the effective date are governed by the prior law, which is continued in effect for that purpose, as if this Code were not in force. For purposes of this section, an offense is committed before the effective date if any of the elements of the offense occurred before that date.

and appropriate guidelines for such a determination. Applying this analysis, we find but one intention and plan here and thus conclude there was one offense. We do not view each filing by defendant of a statement of facts supporting continued eligibility as necessarily constituting a new offense, since all statements were identical, representing that defendant was unmarried, unemployed, and not receiving social security benefits.

Having concluded that defendant committed a continuous offense, we must still determine whether the State's election to prosecute her under an indictment covering only a part of the period of that offense was valid.

In *People v. Norwood*, 312 Mich. 266, 20 N.W.2d 185 (1945), defendants were initially indicted for a conspiracy extending from June 1, 1933 to May 29, 1940. The indictment was twice amended, the final indictment charging a conspiracy from April 25 to May 29, 1940. Defendants claimed the splitting of a continuous offense had placed them in jeopardy. The court ruled that "a conspiracy to violate existing laws is usually a continuing offense, extending over some period of time, and the prosecution may charge and prove the offense in any part of such period." *Id.* at 275, 20 N.W.2d at 188.

Although it can be argued that the continuing offenses of theft and conspiracy are distinguishable, "we see no greater legal obstacle to an indictment based on the continuing scheme of one person than on the continuing conspiracy of more than one." *Bramblett v. United States*, 231 F.2d 489, 491 (D.C. Cir. 1956) (discussing application of statute of limitations to continuing offenses).

The validity of a charge covering only part of the time span of a continuing crime is also inferentially supported by decisions holding that a conviction or acquittal of a continuous offense bars another prosecution for the same offense committed in a period overlapping any portion of the duration of the first. *See Short v. United States*, 91 F.2d 614 (4th Cir. 1937); *Bustamante v. People*, 136 Colo. 362, 317 P.2d 885 (1957). A logical conclusion may be drawn therefrom that prosecutions premised on conduct extending over less than the whole period of a continuing offense are not precluded,

assuming, of course, that all necessary elements can be proved for the shorter period.

We find the State acted within legal bounds in prosecuting defendant under an indictment covering only part of the entire duration of a continuing offense.

## B.

### PROSECUTION UNDER PENAL CODE RATHER THAN PRIOR STATUTE

Because the continuing offense involved conduct commencing before the effective date of the Penal Code, defendant maintains that HRS § 701-101(1) mandated her prosecution under prior existing law.

HRS § 701-101 has not been construed by this court and defendant misinterprets its provisions. Section 701-101(1) provides in relevant part that "an offense is committed before the effective date if any of the elements of the offense occurred before that date." We read this language to simply mean that all the elements necessary to prove a crime charged under the Hawaii Penal Code must be shown to have occurred after its effective date. In the case of a continuing offense, what may have transpired previously is immaterial if each essential element of the crime can be established for a given period subsequent to January 1, 1973. To prove first degree theft here, the State was only obliged to demonstrate that defendant failed to correct a false impression she had created[5] and obtained property of the State with intent to deprive it of the property,[6] the value of which exceeded $200.[7]

Defendant contends that certain "elements" of the crime, *i.e.*, her marriage and the commencement of her employment

---

[5] HRS § 708-800(4)(b).

[6] HRS § 708-830(2).

[7] HRS § 708-831(1)(b).

and that of her husband, occurred before January 1, 1973. Although these events preceded January 1, 1973, they were not essential elements of theft. While they served to alter defendant's status relative to the valid receipt of assistance payments, the deceptive conduct that was an essential element of the offense occurred when defendant failed to disclose them in her semi-annual statement. And, of course, the deception recurred whenever the necessary statements were subsequently filed. Thus, the State clearly established that defendant fostered a false impression in order to obtain assistance payments after January 1, 1973.

Although defendant received monies she was not entitled to prior and subsequent to January 1, 1973, the payments received in the latter period amounted to substantially more than $200. There is no question that each element required to prove first degree theft was established for the period subsequent to January 1, 1973.

## C.

### STATUTE OF LIMITATIONS

Defendant next claims that even if the State properly charged her under HRS § 708-831(1)(b), the pertinent statute of limitations precluded prosecution. This contention is devoid of merit.

HRS § 701-108(2)(b) prescribes that a prosecution for first degree theft must be commenced within three years after its commission. HRS § 701-108(4) states "[a]n offense is committed . . ., if a legislative purpose to prohibit a continuing course of conduct plainly appears, at the time when the course of conduct or the defendant's complicity therein is terminated" and the statute of limitations begins to run on the day after the offense is committed. The language of the theft statute plainly manifests a legislative intent to prohibit continuing conduct since two elements of the pertinent crime, deception and the exercise of control over the property of another, involve conduct that can extend beyond isolated moments, particularly the former. Conduct deceptive enough

to effect grand theft may often entail elaborate schemes of extended conduct.

Relevant precedent holds that the date of the most recent act of a continuing offense governs the application of the statute of limitations. *Bramblett v. United States, supra; United States v. Sloan*, 389 F. Supp. 526 (S.D.N.Y. 1975); *People v. Kirk*, 62 Misc. 2d 1078, 310 N.Y.S.2d 155 (1969). Here, defendant was charged with continuously and wrongfully obtaining state property by deception through January 30, 1976. She last filed a false statement supporting eligibility in September, 1975 and last received welfare assistance not rightfully hers on January 2, 1976. Defendant's illicit scheme therefore continued through 1975 and into 1976, which was less than three years before August 17, 1977 when the indictment was returned. Hence, the statute of limitations did not preclude her prosecution.

### III.

### PROSECUTION FOR THEFT INSTEAD OF WELFARE FRAUD

Defendant argues at length that the State should have prosecuted her under HRS § 346-34, dealing specifically with welfare fraud, rather than under the more general theft statute, HRS § 708-831(1)(b), since both involve similar elements of proof. Relying on *State v. Modica*, 58 Haw. 249, 567 P.2d 420 (1977), she contends her prosecution under a general statute rather than a specific statute proscribing similar conduct violated her constitutional rights to due process and equal protection. The foregoing arguments were recently considered and rejected by this court in *State v. Kuuku*, 61 Haw. 79, 595 P.2d 291 (1979).

Defendant further asserts that even if the statutes require different elements of proof, the legislature intended prosecution of all welfare fraud cases to proceed under HRS § 346-34. In *Kuuku*, this court examined the legislative history of the theft statute and found no intent to bar prosecution of welfare

fraud cases under that statute. However, defendant now argues that the legislative history of the welfare fraud statute indicates such an intent. Having examined the histories of both statutes, we reiterate our conclusion that there is no legislative intent to limit prosecutions for welfare fraud to HRS § 346-34.

IV.

DOUBLE JEOPARDY

Defendant contends, apparently for the first time here, that the dismissal of the first indictment caused jeopardy to attach and precluded a subsequent prosecution: Ordinarily, a reviewing court will not consider issues not raised before the trial court. *State v. Bunn*, 50 Haw. 351, 440 P.2d 528 (1968); *State v. Yoshida*, 45 Haw. 50, 361 P.2d 1032 (1961). However, matters not raised below may be considered and determined by this court where defendant's substantial rights may have been affected because of plain error. *State v. Onishi*, 59 Haw. 384, 581 P.2d 763 (1978); *State v. Bunn, supra*. Since the protection against double jeopardy is constitutionally guaranteed, we shall address the issue.

The double jeopardy clause of the United States Constitution applies to the states through the Fourteenth Amendment, *Benton v. Maryland*, 395 U.S. 784, 793-96 (1969), and the Hawaii constitutional provision prohibiting double jeopardy is cast in substantially similar terms.[8] In addition to these constitutional protections, HRS § 701-110 delineates circumstances under which prosecution is barred by double jeop-

---

[8] U.S. Const. amend. V provides in pertinent part: "No person shall . . . be subject for the same offence [sic] to be twice put in jeopardy of life or limb."

Hawaii Const. art. I, § 8 (amended 1978 to art. I, § 10) provides in relevant part: "No person shall . . . be subject for the same offense to be twice put in jeopardy."

ardy considerations. None of the foregoing, however, aids defendant's cause.

The first indictment was dismissed on defendant's motion based on HRS § 701-101(1) which requires that an indictment charging a crime, an element of which occurred before January 1, 1973, be brought under pre-penal code law. Because this indictment was void, the State acquiesced in its dismissal.

There are two views on when jeopardy attaches with respect to valid indictments. The more-widely accepted rule is that jeopardy does not attach until the court, sitting without a jury, begins to hear the evidence, *United States v. Ajimura*, 446 F. Supp. 1120 (D. Haw. 1978), *aff'd*, 598 F.2d 510 (9th Cir. 1979); *United States v. LeMay*, 330 F. Supp. 628 (D. Mont. 1971), or until the jury is impanelled and sworn. *United States v. Hill*, 473 F.2d 759 (9th Cir. 1972); *United States v. Kimbrew*, 380 F.2d 538 (6th Cir. 1967); *cf. Illinois v. Vitale*, ____ U.S. ____, 100 S. Ct. 2260 (1980).

The minority view is that the mere dismissal of an indictment operates as an acquittal, causes jeopardy to attach, and bars a subsequent prosecution. Defendant urges us to adopt this view, relying on *State v. Reinhard*, 202 Iowa 168, 209 N.W. 419 (1926), for support. *Reinhard*, however, was premised on a statute providing a dismissal of any pending misdemeanor prosecution would bar another prosecution for the same offense. There being no similar provision in Hawaii law, we choose not to adopt the Iowa court's rule.

The prevailing rule regarding invalid indictments enunciated by the United States Supreme Court is that such an indictment "is no bar to a prosecution upon a good one." *United States v. Oppenheimer*, 242 U.S. 85, 87 (1916); *United States v. Kimbrew, supra*. "If . . . [the indictment] is not sufficient, then jeopardy does not attach upon the swearing of the jury." (Citations omitted). *United States v. LeMay, supra*, at 630; *The Queen v. Poor*, 9 Haw. 295 (1893). Here, the parties agreed the first indictment was void, no jury was impanelled, and the circuit judge heard no evidence on the charge. Therefore, whether or not the indictment was void, defendant was not placed in jeopardy by the first charge.

## V.

### TAKING OF HANDWRITING EXEMPLARS

Defendant next challenges the taking of her handwriting exemplars under compulsion. She argues that this was tantamount to an unreasonable search and seizure and was a violation of her privilege against self-incrimination under Article I, Sections 5 and 8, respectively, of the state constitution.[9] She does not, however, allege the writings were of a communicative or testimonial character.

The United States Supreme Court has held that compulsion to produce handwriting exemplars does not transgress the Fourth Amendment because handwriting is a physical characteristic which is "constantly exposed to the public." *United States v. Mara*, 410 U.S. 19, 21 (1973). The Court has also determined that such coercion does not contravene the self-incrimination clause of the Fifth Amendment when the writing is not communicative in nature. *Gilbert v. California*, 388 U.S. 263 (1967). *Accord, United States v. Euge*, _____ U.S. _____, 100 S. Ct. 874 (1980).

Following *Mara* and *Gilbert*, we find no constitutional violation. Defendant does not claim the writings here were of a testimonial or communicative character and the sole purpose for securing the exemplars was to obtain a standard of comparison to determine whether defendant was the author of certain documents.

---

[9] Section 5 reads in pertinent part: "The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches, [and] seizures . . . shall not be violated."

Section 8 provides in relevant part: "No person shall . . . be compelled in any criminal case to be a witness against himself."

Article I, Sections 5 and 8 were amended and renumbered as Article I, Sections 7 and 10, respectively, by the Constitutional Convention of Hawaii of 1978 and ratified by the electorate on November 7, 1978. The substance remains the same.

VI.

## ALLEGED FAILURE OF PROOF ON
## SOCIAL SECURITY PAYMENTS

Finally, defendant argues it was necessary for the State to produce the cancelled social security checks to prove that she actually received and negotiated them. We disagree. Unable to obtain those checks from the main social security office in Maryland during the trial, the State offered records indicating payments were mailed to defendant at her correct address. A local social security representative also testified it was customary for his office to include in its files any complaint regarding non-receipt of payments. (Tr. at 50-52). He further testified there was nothing in these files to indicate that defendant had not received the mailed payments,[10] and defendant presented nothing to demonstrate the non-receipt thereof.

A letter correctly addressed and properly mailed is presumed to have been received. *Dunlop v. United States,* 165 U.S. 486 (1897); *Legille v. Dann,* 544 F.2d 1 (1976). As defendant proffered nothing to rebut this presumption, we find the trial court did not err in concluding that defendant received the social security payments as alleged.

Affirmed.

*Raymond E. Gurczynski and John W. K. Chang,* Deputy Public Defenders on the brief for defendant-appellant.

*Howard J. Gravelle, Jr.,* Deputy Attorney General on the brief for State of Hawaii.

---

[10] On October 10, 1973 defendant filed a change of address form. Sometime later she again informed the Social Security Administration of a change in address. The trial judge might well have inferred that it would be highly unlikely that defendant would report a new address, but not the non-receipt of payments.